# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SOURCE INTERLINK COMPANIES, INC., et al.[1] | Case No.: 09- 11424  CKG) |
| Debtors. | Joint Administration ~~Requested~~ |
|  | RE: D.I. No. 20 |

INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (A) APPROVING POSTPETITION FINANCING, (B) AUTHORIZING USE OF CASH COLLATERAL, (C) GRANTING PRIMING AND OTHER LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION, (E) MODIFYING AUTOMATIC STAY, AND (F) SCHEDULING A FINAL HEARING

This matter having come before the Court upon the motion (the "DIP Motion") by Source

Interlink Companies, Inc. (the "Borrower") and the other debtors (the "Guarantors"), as debtors

and debtors-in-possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases

(collectively with any successor cases, the "Cases"), pursuant to sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C.

§§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Source Interlink Companies, Inc. (8299); AEC Direct, LLC (1003); Automotive.com, LLC (2610); Canoe & Kayak, Inc. (5510); Directtou, Inc. (4741); Enthusiast Media Subscription Company, Inc. (1137); Motor Trend Auto Shows, LLC (5888); RDS Logistics, LLC (0305); Source - Chestnut Display Systems, Inc. (6446); Source Home Entertainment, Inc. (8517); Source Interlink Distribution, LLC (6446); Source Interlink International, Inc. (1428); Source Interlink Magazines, LLC (3601); Source Interlink Manufacturing, LLC (7123); Source Interlink Media, LLC (4935); Source Interlink Retail Services, LLC (6967); Source Mid Atlantic News, LLC (7108); and The Interlink Companies, Inc. (2991). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 27500 Riverview Center Boulevard, Suite 400, Bonita Springs, Florida 34134.

for the United States Bankruptcy Court District of Delaware (the "Local Rules"), seeking entry of an interim order (this "Interim Order") *inter alia*:

(i)        authorizing the Debtors to obtain up to an aggregate of $300,000,000 of secured, superpriority postpetition financing (the "DIP Revolver Facility") pursuant to the terms and conditions of that certain Superpriority Priming Senior Secured Debtor-In-Possession Revolving Credit Agreement, substantially in the form hereto as Exhibit 1, (as amended, supplemented, restated or otherwise modified from time to time, the "DIP Revolver Agreement"), by and among the Borrower, the Guarantors, Citigroup Global Markets Inc. and J.P. Morgan Securities Inc. as joint lead arrangers and joint bookrunners, Wells Fargo Foothill LLC as syndication agent, Citicorp North America, Inc. as administrative agent (or any successor acting in such capacity, the "DIP Revolver Administrative Agent"), and Citicorp North America, Inc. and Wells Fargo Foothill, LLC as co-collateral agents (or any successor acting in such capacity, the "DIP Revolver Collateral Agents") (collectively, the DIP Revolver Administrative Agent and the DIP Revolver Collateral Agents are collectively called the "DIP Revolver Agents"), for and on behalf of themselves, the lenders party thereto from time to time (collectively, the "DIP Revolver Lenders") and the other parties thereto;

(ii)        authorizing the Debtors to obtain up to an aggregate of $85,000,000 secured superpriority postpetition financing (the "DIP Term Loan Facility" and, collectively with the DIP Revolver Facility, the "DIP Facilities") pursuant to that certain Superpriority Priming Senior Secured Debtor-In-Possession Term Loan Agreement, substantially in the form attached hereto as Exhibit 2 (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Term Loan Agreement"), by and among the Borrower, the Guarantors, Citigroup Global Markets Inc. and J.P. Morgan Securities Inc. as joint lead arrangers and joint bookrunners,

MSW ·

JPMorgan Chase Bank, N.A. as syndication agent, and Citicorp North America, Inc. as administrative agent (or any successor acting in such capacity, the "DIP Term Loan Agent" and collectively with the DIP Revolver Administrative Agent, the "DIP Agents") and as collateral agent (the "DIP Term Loan Collateral Agent") for and on behalf of itself, the other lenders party thereto from time to time (collectively, the "DIP Term Loan Lenders," and together with the DIP Revolver Lenders, the "DIP Lenders") and the other parties thereto;

(iii)    authorizing the Debtors to execute and deliver the DIP Revolver Agreement, the notes, if any, the pledge and security agreement, the intellectual property security agreement, the mortgages, the other collateral documents, UCC (as defined below) financing statements, control agreements, fee letters, any commitment letter, and each other document, instrument or agreement to be executed pursuant to or in connection with the DIP Revolver Agreement (the "DIP Revolver Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Revolver Documents;

(iv)    authorizing the Debtors to execute and deliver the DIP Term Loan Agreement, the notes, if any, the pledge and security agreement, the intellectual property security agreement, the mortgages, the other collateral documents, UCC financing statements, control agreements, fee letters, any commitment letter, and each other document, instrument or agreement to be executed pursuant to or in connection with the DIP Term Loan Agreement (the "DIP Term Loan Documents" and, collectively with the DIP Revolver Documents, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(v)    pursuant to section 364(c)(1) of the Bankruptcy Code, granting the DIP Revolver Agents, the DIP Revolver Lenders and all other parties defined as "Secured Parties" in the DIP

3

Revolver Documents (collectively, the "DIP Revolver Secured Parties") and all obligations of the Debtors under the DIP Revolver Documents allowed superpriority administrative expense claim status in each of the Cases, having priority over the Prepetition Adequate Protection Superpriority Claims (as defined below) and any and all administrative expenses of the kinds specified or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code (except as set forth below);

(vi)    pursuant to section 364(c)(1) of the Bankruptcy Code, granting the DIP Term Loan Agent, the DIP Term Loan Lenders and all other parties defined as "Secured Parties" in the DIP Term Loan Documents (collectively, the "DIP Term Loan Secured Parties" and together with the DIP Revolver Secured Parties, the "DIP Secured Parties") and all obligations of the Debtors under the DIP Term Loan Documents allowed superpriority administrative expense claim status in each of the Cases, having priority over the Prepetition Adequate Protection Superpriority Claims and any and all administrative expenses of the kinds specified or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code (except as set forth below);

(vii)    pursuant to section 364(c)(2) of the Bankruptcy Code, granting the DIP Revolver Administrative Agent for the benefit of the DIP Revolver Secured Parties (a) perfected first priority liens on all property of the Debtors of the kind that would come within the definition of "Current Asset Collateral" (as defined in the Intercreditor Agreement (as defined below)) if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility (as defined below) or Prepetition Term Loan Facility (as defined below) and (b) perfected second priority liens on all property of the Debtors of the kind that would come within the definition of "Fixed Asset Collateral" (as defined in the Intercreditor Agreement) if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving

4

Credit Facility or Prepetition Term Loan Facility, in each case, that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date (as defined below) in favor of any party;

(viii)    pursuant to section 364(c)(2) of the Bankruptcy Code, granting the DIP Term Loan Agent for the benefit of the DIP Term Loan Secured Parties (a) perfected first priority liens on all property of the Debtors of the kind that would come within the definition of Fixed Asset Collateral if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or the Prepetition Term Loan Facility and (b) perfected second priority liens on all property of the Debtors of the kind that would come within the definition of Current Asset Collateral if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or Prepetition Term Loan Facility, in each case, that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date in favor of any party;

(ix)    pursuant to section 364(c)(3) of the Bankruptcy Code, granting to the DIP Agents for the benefit of the DIP Secured Parties perfected junior liens on all property of the Debtors that are subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date as permitted by section 546(b) of the Bankruptcy Code (other than as provided with respect to priming liens in paragraph 6 and clauses (x) and (xi), below);

(x)    pursuant to section 364(d)(1) of the Bankruptcy Code, granting the DIP Revolver Administrative Agent for the benefit of the DIP Revolver Secured Parties perfected first priority, senior priming liens on all the property of the Debtors of any kind, senior to (a) the liens that secure the obligations of the Debtors under the Prepetition Revolving Credit Facility, (b) any

5

liens to which such liens are senior (including Prepetition Vendor Liens (as defined below)), all

of which existing liens (together with the liens referred to in clause (a) above, the "Revolving

Loan Primed Liens") shall be primed by and made subject and subordinate to the perfected first

priority senior liens granted hereunder to the DIP Revolver Administrative Agent, which senior

priming liens in favor of the DIP Revolver Administrative Agent also shall prime any liens

granted or created after the commencement of the Cases to provide adequate protection in

respect of any Revolving Loan Primed Liens, but shall not prime liens, if any, to which the

Revolving Loan Primed Liens are subject at the time of the commencement of the Cases;

    (xi)    pursuant to section 364(d)(1) of the Bankruptcy Code, granting the DIP Term

Loan Agent for the benefit of the DIP Term Loan Secured Parties perfected first priority, senior

priming liens on all the property of the Debtors of any kind, senior to (a) the liens that secure the

obligations of the Debtors under the Prepetition Term Loan Facility, (b) any liens to which such

liens are senior (including Prepetition Vendor Liens), all of which existing liens, including each

Prepetition Vendor Lien (together with the liens referred to in clause (a) above, the "Term Loan

Primed Liens") shall be primed by and made subject and subordinate to the perfected first

priority senior liens granted hereunder to the DIP Term Loan Agent, which senior priming liens

in favor of the DIP Term Loan Agent also shall prime any liens granted or created after the

commencement of the Cases to provide adequate protection in respect of any Term Loan Primed

Liens, but shall not prime liens, if any, to which the Term Loan Primed Liens are subject at the

time of the commencement of the Cases;

    (xii)    subject to the limitations below, authorizing and directing the Debtors to pay the

principal, interest, fees, expenses and other amounts payable under each of the DIP Documents

as they become due, including, without limitation, letter of credit fees (including issuance,

fronting, and other related charges), unused facility fees, closing fees, servicing fees, audit fees, structuring fees, administrative agent's fees and any other fees payable to any "Facility Agent" (as defined in the DIP Documents), the fees and disbursements of each of the Facility Agent's attorneys, advisers, accountants, and other consultants, and the legal expenses of the DIP Lenders, whether or not the transactions contemplated hereby are consummated, all to the extent provided by and in accordance with the terms of the respective DIP Documents;

(xiii)    authorizing the Debtors to execute and deliver an amendment to the Intercreditor Agreement (as defined below) and to perform such other acts as may be necessary or desirable in connection therewith;

(xiv)    authorizing the Debtors' use of the Cash Collateral (as defined below) of the Prepetition Lenders (as defined below);

(xv) providing adequate protection (a) to the Prepetition Term Loan Lenders (as defined below) for any diminution in value of their interests in the Prepetition Collateral (as defined below), including the Cash Collateral, (b) to the Prepetition Revolving Credit Lenders (as defined below) to the limited extent that contingent indemnification or reimbursement obligations remain outstanding after closing of the postpetition financing approved herein (the "General Reimbursement Obligations"), and (c) to each Prepetition Secured Vendor (as defined below) for any diminution in value of their interests in the Shared Collateral (as defined below);

(xvi)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(xvii)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

7

The Court having considered the DIP Motion, the *Declaration of Steven G. Panagos in Support of Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Approving Postpetition Financing, (B) Authorizing use of Cash Collateral, (C) Granting Priming and other Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection, (E) Modifying Automatic Stay, and (F) Scheduling a Final Hearing,* the *Declaration of Douglas J. Bates, in Support of First Day Motions,* the exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on April 29, 2009 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and extraordinary circumstances exist within the meaning of Local Rule 4001-2(b), and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*.  On April 27, 2009 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.    *Debtors-in-Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code.

E.    *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, the Debtors (on behalf of and for themselves and their estates) admit, stipulate, acknowledge and agree that (collectively, sections (i) through (ix) below are referred to herein as the "Debtors' Stipulations"):

(i)    *Prepetition Revolving Credit Facility.*  Prior to the commencement of the Cases, pursuant to that certain Revolving Credit Agreement, dated as of August 1, 2007 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Revolving Credit Agreement," and together with all Credit Documents (as defined in the Prepetition Revolving Credit Agreement), the "Prepetition Revolving Credit Documents"),

9

by and among the Borrower, the Guarantors (including certain of their predecessors), Citigroup

Global Markets Inc. and J.P. Morgan Securities Inc. as joint lead arrangers and joint book

runners, JPMorgan Chase Bank, N.A. as syndication agent, Wachovia Bank, National

Association and Wells Fargo Foothill, LLC as co-documentation agents and Citicorp North

America, Inc. as administrative agent and as collateral agent (the "Prepetition Revolving Credit

Agent"), the lenders party thereto (collectively, the "Prepetition Revolving Credit Lenders"), and

the other parties thereto, the Prepetition Revolving Credit Lenders provided the Borrower with,

among other things: up to $300,000,000 in aggregate maximum principal amount of revolving

commitments, including letters of credit and swingline loan commitments, with a sublimit for

letters of credit of up to $50,000,000 or the aggregate unused amount of the revolving

commitments, whichever is less (the "Prepetition Revolving Credit Facility"). The Prepetition

Revolving Credit Agent, the Prepetition Revolving Credit Lenders, and all other parties that are

defined as "Secured Parties" in the Prepetition Revolving Credit Documents are referred to

herein as the "Prepetition Revolving Credit Secured Parties."

(ii)    *Prepetition Revolving Credit Obligations.*  As of the Petition Date, (a) the

outstanding principal amount of revolving loan debt owed by the Borrower and the Guarantors

under the Prepetition Revolving Credit Facility was approximately $149,439,142.28, and (b) the

outstanding face amount of all letters of credit under the Prepetition Revolving Credit Facility

was approximately $31,715,528, plus interest, fees, charges, and other obligations owed to the

Prepetition Revolving Credit Secured Parties.  The obligations owed to the Prepetition Revolving

Credit Secured Parties under the Prepetition Revolving Credit Documents and all other

"Obligations" as defined in the Prepetition Revolving Credit Agreement are referred to herein as

the "Prepetition Revolving Credit Obligations."

MSW ·

(iii)    *Prepetition Term Loan Agreement*.  Prior to the commencement of the

Cases, pursuant to that certain Term Loan Agreement, dated as of August 1, 2007 (as amended,

supplemented, restated, or otherwise modified prior to the Petition Date, the "<u>Prepetition Term</u>

<u>Loan Agreement</u>"), and together with all Credit Documents as defined in the Prepetition Term

Loan Agreement (the "<u>Prepetition Term Loan Documents</u>," and, together with the Prepetition

Revolving Credit Documents, the "<u>Prepetition Documents</u>"), by and among the Borrower, the

Guarantors (including certain of their predecessors), Citigroup Global Markets Inc. and J.P.

Morgan Securities Inc. as joint lead arrangers and joint book runners, JPMorgan Chase Bank,

N.A. as syndication agent and Citicorp North America, Inc., as administrative agent and as

collateral agent (the "<u>Prepetition Term Loan Agent</u>" and with the Prepetition Revolving Credit

Agent, the "<u>Prepetition Agents</u>"), the lenders party thereto (collectively, the "<u>Prepetition Term</u>

<u>Loan Lenders</u>" and, together with the Prepetition Revolving Credit Lenders (the "<u>Prepetition</u>

<u>Lenders</u>"), and the other parties thereto, the Prepetition Term Lenders provided a term loan to the

Borrower in the aggregate principal amount of $880,000,000 (the "<u>Prepetition Term Loan</u>

<u>Facility</u>" and together with the Prepetition Revolving Credit Facility, the "<u>Prepetition Facilities</u>").

The Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, and all other parties that

are defined as "Secured Parties" in the Prepetition Term Loan Documents are referred to herein

as the "<u>Prepetition Term Loan Secured Parties</u>" and, together with the Prepetition Revolving

Credit Secured Parties, the "<u>Prepetition Secured Parties</u>."

(iv)    *Prepetition Term Loan Obligations*.  As of the Petition Date, the Borrower

and the Guarantors were indebted under the Prepetition Term Loan Facility in the aggregate

amount of not less than $866,800,000 plus interest, fees, charges, and other obligations owed to

the Prepetition Term Loan Secured Parties.  The obligations owed to the Prepetition Term Loan

**11**

Secured Parties under the Prepetition Term Loan Documents and all other "Obligations" as defined in the Prepetition Term Loan Agreement, and are referred to herein as the "Prepetition Term Loan Obligations" and, together with the Prepetition Revolving Credit Obligations, the "Prepetition Obligations."

(v)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Documents, prior to the Petition Date, the Debtors granted security interests in and liens on, among other things, substantially all of their assets (collectively, the "Prepetition Collateral") to: (1) the Prepetition Revolving Credit Agent for the benefit of the Prepetition Revolving Credit Secured Parties (the "Prepetition Revolving Credit Liens"); and (2) the Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Secured Parties (the "Prepetition Term Loan Liens," and together with the Prepetition Revolving Credit Liens, the "Prepetition Liens").

(vi)    *Intercreditor Agreement.*  The Borrower, the Guarantors, and the Prepetition Revolving Credit Agent for the benefit of the Prepetition Revolving Credit Secured Parties and the Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Secured Parties are parties to that certain Intercreditor Agreement, dated August 1, 2007 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Intercreditor Agreement"), pursuant to which the parties thereto agreed, among other things, that (a) the liens granted under the Prepetition Revolving Credit Documents to the Prepetition Revolving Credit Agent for the benefit of the Prepetition Revolving Credit Secured Parties on the Current Asset Collateral are senior and prior to the liens thereon granted under the Prepetition Term Loan Documents to the Prepetition Term Loan Agent for the benefit of Prepetition Term Loan Secured Parties; and (b) the liens granted under the Prepetition Term

12

Loan Documents to the Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Secured Parties on the Fixed Asset Collateral are senior and prior to the liens thereon granted under the Prepetition Revolving Credit Documents to the Prepetition Revolving Credit Agent for the benefit of the Prepetition Revolving Credit Secured Parties. The Debtors admit, stipulate and agree that the Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof. The parties to the Intercreditor Agreement acknowledge: (x) that the DIP Term Loan Agent shall be deemed a Term Loan Agent under the Intercreditor Agreement and (y) from and after entry of the Interim Order, the priority of liens and distribution of proceeds with respect thereto shall be governed by the Interim Order or, to the extent applicable, by the Final Order (as defined below), and the Intercreditor Agreement to the extent not modified by the Interim Order or by the Final Order, as the case may be.

(vii)    *Validity, Perfection and Priority of Prepetition Liens and Obligations.* The Debtors (for themselves and their estates only) acknowledge and agree that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Revolving Credit Liens had priority over all other liens on the Prepetition Collateral that was Current Asset Collateral and were junior to the Prepetition Term Loan Liens on the Prepetition Collateral that was Fixed Asset Collateral; (c) as of the Petition Date, the Prepetition Term Loan Liens had priority over all other liens on the Prepetition Collateral that was Fixed Asset Collateral and were junior to the Prepetition Revolving Credit Liens on the Prepetition Collateral that was Current Asset Collateral; (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or

13

counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) they have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to their respective loans to the Debtors; (g) as of the Petition Date, the value of the collateral securing the Prepetition Revolving Credit Obligations exceeded the amount of those obligations, and accordingly the Prepetition Revolving Credit Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount of not less than $181,154,670.28, plus accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of such Prepetition Revolving Credit Obligations; and (h) any payments made on account of the Prepetition Revolving Credit Obligations to or for the benefit of the Prepetition Revolving Credit Secured Parties prior to the Petition Date were on account of amounts in respect of which the Prepetition Revolving Credit Secured Parties were oversecured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(viii)    *Cash Collateral.*  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or

**14**

proceeds of other Prepetition Collateral, constitute the "Cash Collateral" of the Prepetition

Secured Parties.

        (ix)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the

Debtors are in default of their debts and obligations under the Prepetition Revolving Credit

Documents and the Prepetition Term Loan Documents.

        (x)    ~~Notwithstanding anything herein to the contrary, the Debtors' stipulations~~

~~provided by this Paragraph E shall not be binding on any official committee appointed in these~~

~~Chapter 11 Cases solely in the event the Debtors do not consummate a plan of reorganization on~~

~~or within 60 days after entry of this Interim Order; provided that the stipulations provided by this~~

~~Paragraph E shall be binding on such committee, if any, 60 days following its appointment.~~

*[handwritten: Any party may bring any challenge with respect to the subject matter addressed by the stipulations provided in this Paragraph E until the time fixed for objections to confirmation of the Plan or such later date as may be agreed to by the DIP Lenders or ordered by the Court.]*

F.     *Findings Regarding the Postpetition Financing.*

        (i)    *Request for Postpetition Financing.*  The Debtors seek authority to (a)

enter into the DIP Facilities on the terms described herein and in the DIP Documents, and (b) use

Cash Collateral on the terms described herein to administer their Cases and fund their operations.

At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing

arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the

"Final Order"), which shall be in form and substance acceptable to the applicable "Requisite

Lenders" (as defined in applicable DIP Documents).  Notice of the Final Hearing and Final

Order will be provided in accordance with this Interim Order.

        (ii)    *Priming of the Prepetition Liens.*

        (a)    *Prepetition Liens.*  The priming of the Prepetition Liens on the

Prepetition Collateral pursuant to section 364(d) of the Bankruptcy Code by the DIP Liens (as

defined below and as further described in paragraph 6 below) will enable the Debtors to obtain

the DIP Facilities and to continue to operate their businesses for the benefit of their estates and creditors. The Prepetition Lenders consent to such priming liens and are entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale or lease of such collateral, the imposition of the automatic stay, the priming of their liens on the Prepetition Collateral, and the subordination to the Carve Out (as defined below), collectively, and solely to the extent of any such diminution in value (the "Diminution in Value").

        (b)    *Prepetition Vendor Liens.* The priming of the liens granted by the Debtor to certain of their vendors (each a "Prepetition Secured Vendor") on certain inventory and products and proceeds thereof (each a "Prepetition Vendor Lien") pursuant to a security agreement entered into by each Prepetition Secured Vendor and a Debtor by the DIP Liens pursuant to section 364(d) of the Bankruptcy Code will enable the Debtors to obtain the DIP Facilities and to continue to operate their businesses for the benefit of their estates and creditors. Each Prepetition Secured Vendor is entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363 and 364 of the Bankruptcy Code for the Diminution in Value of their respective interests in the encumbered inventory resulting from the Debtors' use, sale or lease of such collateral, the imposition of the automatic stay, the priming of their liens on the applicable encumbered inventory and the subordination to the Carve Out and solely to the extent of the Diminution in Value. Each Prepetition Secured Vendor has agreed in a certain intercreditor and subordination agreement entered into by such Prepetition Secured Vendor and the Prepetition Agents (each an "Intercreditor and Subordination Agreement," collectively, the "Intercreditor and Subordination Agreements") that such Prepetition Secured Vendor will not

16

MSW ·

object to the priming of its Prepetition Vendor Lien, upon the granting of a replacement lien on "Shared Collateral" (as defined in such Intercreditor and Subordination Agreement) which is granted pursuant to this Order.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facilities is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either would immediately and irreparably harm the Debtors, their estates and their creditors, and the possibility for a successful reorganization.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facilities.  The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also have been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.

17

Financing on a postpetition basis is not otherwise available without granting the DIP Liens to the DIP Agents on behalf of the DIP Secured Parties and the DIP Superpriority Claims (as defined below) to the DIP Secured Parties.

(v)     *Extraordinary Circumstances.* Extraordinary circumstances exist within the meaning of Local Rule 4001-2(b) as set forth in the DIP Motion and at the Interim Hearing to the extent necessary to justify the relief set forth in this Interim Order.

(vi)     *Use of Proceeds of the DIP Facilities, Payment of Prepetition Revolving Credit Obligations.* As a condition to entry into the DIP Revolver Agreement and the DIP Term Loan Agreement, and the extending of credit under the DIP Facilities and the authorizing to use Cash Collateral, the DIP Lenders require, and the Debtors have agreed, that proceeds of the DIP Revolver Facility and the DIP Term Loan Facility shall be used only for the purposes specifically set forth in the DIP Documents and in compliance with the Budget (as defined below) attached hereto as Exhibit 3. Immediately upon the "Closing Date" (as defined in the DIP Revolver Agreement), the Debtors are authorized to draw the Interim Financing (as defined below) under the DIP Revolver Facility to repay in full from the initial advances thereunder all outstanding Revolving Loans, Swing Line Loans, if any, and Protective Advances (each as defined in the Prepetition Revolving Credit Agreement), including, without limitation, accrued and unpaid interest, fees, expenses, and disbursements, reasonable attorneys' fees, related expenses and disbursements, and any amounts owing under the Prepetition Revolving Credit Documents that are contingent and subsequently become fixed and owing. The repayment of these obligations in accordance with this Interim Order is necessary as the Prepetition Revolving Credit Lenders have not otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Revolver Liens (as defined below). Any letters of credit

18

outstanding as of the Petition Date shall be deemed on the Closing Date to be issued under such
DIP Revolver Documents.

      (vii)    *Application of Proceeds of DIP Collateral.*  As a condition to entering into
the DIP Documents, the extending of credit under the DIP Facilities, and the authorizing to use
Cash Collateral, the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties have
agreed that the proceeds of DIP Collateral shall be applied in a manner consistent with the terms
and conditions of the DIP Documents.

      G.    *Adequate Protection.*

      (i)    The Prepetition Term Loan Agent for the benefit of the Prepetition Term
Loan Secured Parties is entitled to receive adequate protection to the extent of any Diminution in
Value of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral
(including Cash Collateral) during the Cases.  Pursuant to sections 361, 363(e), and 364(d), as
adequate protection the Prepetition Term Loan Agent for the benefit of the Prepetition Term
Loan Secured Parties shall receive replacement liens on the DIP Collateral ("Prepetition Term
Loan Adequate Protection Liens") and superpriority administrative claims and other adequate
protection as more fully set forth in paragraphs 12 and 13 below.

      (ii)    The Prepetition Revolving Credit Agent for the benefit of the Prepetition
Revolving Credit Secured Parties is entitled to receive adequate protection for the General
Reimbursement Obligations.  Pursuant to sections 361, 363(e), and 364(d), as adequate
protection the Prepetition Revolving Credit Agent for the benefit of the Prepetition Revolving
Credit Secured Parties shall receive replacement liens on the DIP Collateral ("Prepetition
Revolving Credit Adequate Protection Liens" and, together with Prepetition Term Loan
Adequate Protection Liens, the "Prepetition Adequate Protection Liens") and superpriority

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

administrative claims and other adequate protection as more fully set forth in paragraphs 12 and 13 below.

(iii)    Each Prepetition Secured Vendor holding a Prepetition Vendor Lien is entitled to receive adequate protection to the extent of any Diminution in Value of its respective interests in the Shared Collateral during the Cases.  Pursuant to sections 361, 363(e), and 364(d) as adequate protection each Prepetition Secured Vendor shall receive a replacement lien on the DIP Collateral constituting "Shared Collateral" (the "Prepetition Vendor Adequate Protection Lien," collectively, the "Prepetition Vendor Adequate Protection Liens") as more fully set forth in paragraph 12 below.

H.    *Sections 506(c) and 552(b)*.  In light of (i) the DIP Revolver Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out, the DIP Term Loan Liens (as defined below) (solely on the DIP Term Loan Priority Collateral, as defined below), the Prepetition Term Loan Liens (solely on the Fixed Asset Collateral) in existence as of the Petition Date, and the Prepetition Term Loan Adequate Protection Liens (solely on the DIP Term Loan Priority Collateral); (ii) the DIP Term Loan Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out, the DIP Revolver Liens (solely on the DIP Revolver Priority Collateral (as defined below)), the Prepetition Revolving Credit Liens (solely on the Current Asset Collateral, in existence as of the Petition Date), and the Prepetition Revolving Credit Adequate Protection Liens (solely on the DIP Revolver Priority Collateral); (iii) the Prepetition Term Loan Secured Parties' agreement to subordinate their liens to the Carve Out, the DIP Revolver Liens (solely on the DIP Revolver Priority Collateral), the DIP Term Loan Liens, the Prepetition Revolving Credit Liens (solely on the Current Asset Collateral, in existence as of the Petition Date), and the Prepetition Revolving Credit Adequate

20

MSW -

Protection Liens (solely on the DIP Revolver Priority Collateral); (iv) the Prepetition Revolving

Credit Secured Parties' agreement to subordinate the Prepetition Revolving Credit Adequate

Protection Liens securing the General Reimbursement Obligations to the Carve Out, the DIP

Revolver Liens, the DIP Term Loan Liens (solely on the DIP Term Loan Priority Collateral), the

Prepetition Term Loan Liens (solely on the Fixed Asset Collateral, in existence on the Petition

Date) and the Prepetition Term Loan Adequate Protection Liens (solely on the DIP Term Loan

Priority Collateral), each of the DIP Secured Parties and each of the Prepetition Secured Parties

(a) will be seeking a waiver, upon entry of the Final Order, the provisions of section 506(c) of

the Bankruptcy Code and (b) are entitled to a waiver of any "equities of the case" claims under

section 552(b) of the Bankruptcy Code.

I.    _Good Faith of the DIP Agents and the DIP Lenders_.

(i)    _Willingness to Provide Financing_. The DIP Lenders each have indicated a

willingness to provide financing to the Debtors subject to: (a) the entry of this Interim Order and

the Final Order; (b) approval of the terms and conditions of the DIP Facilities and the DIP

Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors'

estates, that the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents

in good faith, that each of the DIP Secured Parties have acted in good faith in connection with

this Interim Order and their reliance on this Interim Order is in good faith, and that the DIP

Secured Parties' claims, superpriority claims, security interests, liens, rights, and other

protections granted pursuant to this Interim Order and the DIP Documents will have the

protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any

subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this

Interim Order or any other order, provided that the Interim Order was not stayed by order after

21

due notice had been given to the DIP Agents and DIP Lenders at the time the advances were made or the liens, claims or priorities were authorized and/or created.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facilities and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facilities, the DIP Documents and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties.  Use of Cash Collateral and credit to be extended under the DIP Facilities shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

(iii)    *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (iii) counsel to the Prepetition Agents; (iv) counsel to the DIP Agents; (v) Securities and Exchange Commission; (vi) Internal Revenue Service; (vii) the trustee for the Debtors' 11.25% Secured Unsecured Notes due 2015; (viii) each Prepetition Secured Vendor; and (ix) each Landlord or warehouseman with respect to each Warehouse (as defined below). The parties have made reasonable efforts to afford the best notice possible under the

22

circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Interim Financing Approved.  The DIP Motion is granted, the Interim Financing is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled.  All objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled.

DIP Facilities Authorization

3.      Authorization of the DIP Financing and DIP Documents.  The DIP Documents are hereby approved to the extent necessary for the Interim Financing and the repayment in full from the initial advances under the DIP Revolver Facility of all outstanding Revolving Loans, Swing Line Loans, if any, and Protective Advances (each as defined in the Prepetition Revolving Credit Agreement), including, without limitation, accrued and unpaid interest, fees, expenses, and disbursements, reasonable attorneys' fees, related expenses and disbursements, and any amounts owing under the Prepetition Revolving Credit Documents that are contingent and subsequently become fixed and owing.  Any letters of credit outstanding as of the Petition Date, shall be deemed on the Closing Date to be issued under the DIP Revolver Documents.  The Debtors are expressly and immediately authorized and directed (A) to execute and deliver: (i) the DIP Revolver Documents and to incur and to perform the Obligations (as defined in the DIP Revolver Agreement, the "DIP Revolver Obligations,") in accordance with, and subject to the

23

terms of this Interim Order and the DIP Revolver Documents, (ii) the DIP Term Loan Documents and to incur and to perform the Obligations (as defined in the DIP Term Loan Agreement, the "DIP Term Loan Obligations,") in accordance with, and subject to the terms of this Interim Order and the DIP Term Loan Documents, and (iii) the amendment to the Intercreditor Agreement; (B) to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facilities and for the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents; and (C) to perform all obligations under the DIP Documents in accordance with the terms set forth therein and in this Interim Order.  Subject to the limitations set forth below, the Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP Documents as such become due and without need to obtain further court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, servicing fees, audit fees, structuring fees, administrative agent's fees and any other fees payable to any Facility Agent, the fees and disbursements of each of the Facility Agent's attorneys, advisers, accountants, and other consultants, and the legal expenses of the DIP Lenders, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  Upon execution and delivery of the DIP Documents, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms and the DIP Revolver

24

Obligations and the DIP Term Loan Obligations shall constitute valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

4.    <u>Authorization to Borrow</u>.  Until the Revolving Commitment Termination Date (as defined in the DIP Revolver Agreement) or the Term Loan Maturity Date (as defined in the DIP Term Loan Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents, the DIP Facilities, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to (a) request extensions of credit (in the form of loans and letters of credit) up to an aggregate principal amount of $300,000,000 at any one time outstanding, including a sublimit for letters of credit up to $50,000,000 under the DIP Revolver Facility (the "<u>Interim DIP Revolver Financing</u>"); and (b) borrow an aggregate principal amount of $85,000,000 under the DIP Term Loan Facility (the "<u>Interim DIP Term Loan Financing</u>" and together with the Interim DIP Revolver Financing, the "<u>Interim Financing</u>").

5.    <u>DIP Obligations</u>.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Term Loan Obligations and DIP Revolver Obligations (and, together with any other payment or performance obligations of the Debtors hereunder, collectively, the "<u>DIP Obligations</u>") which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases.

6.    <u>Postpetition Liens and Collateral</u>.  Effective immediately upon the entry of this Interim Order, and subject to the relative priorities among the DIP Liens, the Prepetition Adequate Protection Liens, the Prepetition Vendor Adequate Protection Liens, and the

MSW -

Prepetition Liens, as set forth in this Interim Order, the DIP Agents for the benefit of the DIP

Secured Parties are hereby granted liens as set forth in sections (a) and (b) of this paragraph

secured by any and all of the assets of the Debtors, including, without limitation, all money and

cash equivalents; all accounts; all books; all chattel paper; all deposit accounts; all equipment

and fixtures; all general intangibles (including without limitation, all patents, copyrights,

trademarks, trade names or other intellectual property); all inventory; all investment related

property (including interests in subsidiaries); all negotiable collateral; all commercial tort claims;

all owned real estate; all capital stock and other equity interests in subsidiaries; all unencumbered

assets, including proceeds of any and all lawsuits or causes of action; all proceeds of any

avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any

postpetition transfer of collateral; upon entry of a Final Order, all avoidance power claims or

actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof (the "<u>DIP Collateral</u>").

      (a)    *DIP Term Loan Liens and DIP Term Loan Priority Collateral.* The DIP

Term Loan Agent for the benefit of the DIP Term Loan Secured Parties is hereby granted the

following liens (which shall immediately be valid, binding, permanent, continuing, enforceable

and non-avoidable) to secure the DIP Term Loan Obligations:

     1.     pursuant to section 364(c)(2) of the Bankruptcy Code, (A) perfected first priority liens on all property of the Debtors of the kind that would come within the definition of Fixed Asset Collateral if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or Prepetition Term Loan Facility and (B) perfected second priority liens on all property of the Debtors of the kind that would come within the definition of Current Asset Collateral if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or the Prepetition Term Loan Facility, in each case, that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date in favor of any party, including, without limitation, stock in subsidiaries, foreign and domestic, except that with respect to non-U.S. subsidiaries such lien and pledge shall be limited to 65% of the capital stock of "first-tier" non-U.S. subsidiaries;

26

2.      pursuant to section 364(c)(3) of the Bankruptcy Code, perfected junior liens on all property of the Debtors that are subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date as permitted by section 546(b) of the Bankruptcy Code (other than as provided with respect to priming liens in clause (3) below); and

3.      pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all the property of the Debtors now owed or hereafter acquired of any kind, senior to (A) the liens that secure the obligations of the Debtors under the Prepetition Term Loan Facility and (B) any liens to which such liens are senior (including Prepetition Vendor Liens), all of which existing liens (together with the Term Loan Primed Liens) shall be primed by and made subject and subordinate to the perfected first priority senior liens granted hereunder to the DIP Term Loan Agent, which senior priming liens in favor of the DIP Term Loan Agent also prime any liens created after the commencement of the Cases to provide adequate protection in respect of any Term Loan Primed Liens, but shall not prime liens, if any, to which the Term Loan Primed Liens are subject at the time of the commencement of the Cases.

4.      The liens described above in subsections (1)-(3) of section (a) above are collectively called the "DIP Term Loan Liens." Such liens and security interests shall not be subject or subordinate to any liens or security interests that are avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any of the Debtors other than with respect to any liens or security interest arising after the Petition Date and permitted under the DIP Term Loan Facility to be senior to the liens granted thereunder and hereunder. The "DIP Term Loan Priority Collateral" shall include all of the Fixed Asset Collateral that secures the Prepetition Term Loan Obligations under the Prepetition Term Loan Facility, all of the postpetition collateral that becomes Fixed Asset Collateral because of this Interim Order, and all property of the Debtors that would come within the definition of Fixed Asset Collateral if it were Prepetition Collateral that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date in favor of any party.

(b)      *DIP Revolver Liens and DIP Revolver Priority Collateral.* Specifically,

the DIP Revolver Administrative Agent for the benefit of the DIP Revolver Secured Parties are

27

hereby granted the following liens (which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable) to secure the DIP Revolver Obligations:

1.  pursuant to section 364(c)(2) of the Bankruptcy Code, (A) perfected first priority liens on all property of the Debtors of the kind that would come within the definition of Current Asset Collateral if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or Prepetition Term Loan Facility and (B) perfected second priority liens on all property of the Debtors of the kind that would come within the definition of Fixed Asset Collateral, if such property were subject to liens securing the Debtors' obligations under the Prepetition Revolving Credit Facility or Prepetition Term Loan Facility, in each case, that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date in favor of any party, including, without limitation, stock in subsidiaries, foreign and domestic, except that with respect to non-U.S. subsidiaries such lien and pledge shall be limited to 65% of the capital stock of "first-tier" non-U.S. subsidiaries;

2.  pursuant to section 364(c)(3) of the Bankruptcy Code, perfected junior liens on all property of the Debtors that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, (other than as provided with respect to priming liens in clause (3), below); and

3.  pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all the property of the Debtors now owned or hereafter acquired of any kind, senior to (A) the liens that secure the obligations of the Debtors, under the Prepetition Revolving Credit Facility and (B) any liens to which such liens are senior (including the Prepetition Vendor Liens) all of which existing liens (together with the Revolving Loan Primed Liens) shall be primed by and made subject and subordinate to the perfected first priority senior liens granted hereunder to the DIP Revolver Administrative Agent, which senior priming liens in favor of the DIP Revolver Administrative Agent also shall (x) after the repayment in full of the Prepetition Revolving Credit Facility, continue to prime any liens to which the liens securing the obligations of the Debtors under the Prepetition Revolving Credit Facility were senior as of the commencement of the Cases (including the Prepetition Vendor Liens) and (y) prime any liens created after the commencement of the Cases to provide adequate protection in respect of any Revolving Loan Primed Liens, but shall not prime liens, if any, to which the Revolving Loan Primed Liens are subject at the time of the commencement of the Cases.

28

4.      The liens described above in subsections (1)-(3) of section (b) above are collectively called the "DIP Revolver Liens," and together with the DIP Term Loan Liens, the "DIP Liens." Such DIP Revolver Liens and security interests shall not be subject or subordinate to any liens or security interests that are avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any of the Debtors other than with respect to any liens or security interest arising after the Petition Date and permitted under the DIP Revolver Facility to be senior to the liens granted thereunder and hereunder. The "DIP Revolver Priority Collateral" shall include all of the Current Asset Collateral that secures the Prepetition Revolving Credit Obligations under the Prepetition Revolving Credit Facility, all of the postpetition collateral that becomes Current Asset Collateral because of this Interim Order, and all property of the Debtors that would come within the definition of Current Asset Collateral if it were Prepetition Collateral that is not subject to valid, perfected and non-avoidable liens in existence on the Petition Date.

7.      DIP Lien Priority.

(a)      *DIP Revolver Liens.* Notwithstanding the Intercreditor Agreement, the

DIP Revolver Liens securing the DIP Revolver Obligations shall be junior to (i) the Carve Out,

(ii) the DIP Term Loan Liens (solely with respect to the DIP Term Loan Priority Collateral), (iii)

the Prepetition Term Loan Liens (solely with respect to the Fixed Asset Collateral in existence

on the Petition Date), and (iv) the Prepetition Term Loan Adequate Protection Liens (solely with

respect to the DIP Term Loan Priority Collateral) and shall otherwise be senior in priority and

superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP

Revolver Priority Collateral. Other than as set forth herein or as further ordered by the Court, the

DIP Revolver Liens shall not be made subject to or *pari passu* with any lien or security interest

heretofore or hereinafter granted in the Cases. The DIP Revolver Liens shall be valid and

enforceable against any trustee or other estate representative appointed in the Cases, upon the

conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code, and/or upon

the dismissal of any of the Cases. The DIP Revolver Liens shall not be subject to sections 510,

MSW -

549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Revolver Liens.

(b)    *DIP Term Loan Liens.* Notwithstanding the Intercreditor Agreement, the DIP Term Loan Liens securing the DIP Term Loan Obligations shall be junior to (i) the Carve Out, (ii) the DIP Revolver Liens (solely with respect to the DIP Revolver Priority Collateral), (iii) the Prepetition Revolving Credit Liens (solely with respect to Current Asset Collateral in existence as of the Petition Date), and (iv) the Prepetition Revolving Credit Adequate Protection Liens (solely with respect to DIP Revolver Priority Collateral), and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral. Other than as set forth herein or as further ordered by the Court, the DIP Term Loan Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases. The DIP Term Loan Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Cases. The DIP Term Loan Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Term Loan Liens.

8.    DIP Superpriority Claims.

(a)    *DIP Revolver Superpriority Claim.* Upon entry of this Interim Order, the DIP Revolver Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases

30

(the "DIP Revolver Superpriority Claim") for all DIP Revolver Obligations. The DIP Revolver Superpriority Claim shall be subordinate only to the Carve Out and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, and 546(c), except as set forth herein, as provided under section 364(c)(1) of the Bankruptcy Code.

(b)   *DIP Term Loan Superpriority Claim.*   Upon entry of this Interim Order, the DIP Term Loan Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases (the "DIP Term Loan Superpriority Claim," and together with the DIP Revolver Superpriority Claim, the "DIP Superpriority Claims") for all DIP Term Loan Obligations. The DIP Term Loan Superpriority Claim shall be subordinate only to the Carve Out and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, and 546(c), except as set forth herein, as provided under section 364(c)(1) of the Bankruptcy Code.

9.   No Obligation to Extend Credit.

(a)   *DIP Revolver Agents and DIP Revolver Lenders.*   Neither the DIP Revolver Lenders nor any issuing bank shall have any obligation to make any loan or advance or to issue any letter of credit under the DIP Revolver Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Revolver Documents and this Interim Order have been satisfied in full or waived by the Requisite Lenders, each in their sole discretion, in accordance with the DIP Revolver Documents.

(b)   *DIP Term Loan Agent and DIP Term Loan Lenders.*   The DIP Term Loan Lenders shall have no obligation to make any loan or advance, under the DIP Term Loan

Documents unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Term Loan Documents and this Interim Order have been satisfied in full or waived by the Requisite Lenders, each in their sole discretion.

       10.    Use of DIP Facilities Proceeds.

       (a)    *Generally.* From and after the Petition Date and after repayment in full from the initial advances under the DIP Revolver Facility of all outstanding Revolving Loans, Swing Line Loans, if any, and Protective Advances (each as defined in the Prepetition Revolving Credit Agreement), including, without limitation, accrued and unpaid interest, fees, expenses, and disbursements, reasonable attorneys' fees, related expenses and disbursements, and any amounts owing under the Prepetition Revolving Credit Documents that are contingent and subsequently become fixed and owing, the Debtors shall use advances of credit under the DIP Facilities only for the purposes specifically set forth in this Interim Order, the DIP Documents, and in compliance with the Budget, a copy of which has been delivered to each of the DIP Agents.

       (b)    *Ordinary Course Payments to Vendors.* Subject to (a) above, advances of credit under the DIP Facilities will be used to pay prepetition obligations owed to vendors, provided that the Debtors send a notice to each vendor that any such payment is pursuant to a court order which requires that each vendor that accepts such payment agrees to continue to do business with the Debtors in the ordinary course pursuant to terms in effect immediately prior to the Petition Date.

Authorization to Use Cash Collateral

       11.    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Documents, Section 2.13(e) of the DIP Revolver Agreement, and the cash management system set forth in Section 5.15 ("*Cash Management*") of the DIP Revolver

Agreement, the Debtors are authorized to use Cash Collateral in accordance with the Budget until the Revolving Commitment Termination Date or the Term Loan Maturity Date, as they may be; provided, however, that during the Remedies Notice Period (as defined below) or the DIP Term Loan Remedies Notice Period (as defined below), the Debtors may use only Cash Collateral that is in a Debtor's deposit account at the commencement of the Remedies Notice Period in accordance with the terms and provisions of the Budget: (i) to pay Carve Out expenses as set forth below; and (ii) to the extent they become due and payable during the Remedies Notice Period or the DIP Term Loan Remedies Notice Period, solely to pay payroll and other expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agents and DIP Lenders, each in its sole discretion. Proceeds of collateral received during the Remedies Notice Period shall continue to be applied in accordance with the terms of the DIP Revolver Agreement. Unless the Court determines during the Remedies Notice Period or the DIP Term Loan Remedies Notice Period that an Event of Default (as defined below) has not occurred, the Debtors shall have no further authorization under this Interim Order to use Cash Collateral or right to seek to use Cash Collateral over the objection of the DIP Agents or DIP Lenders. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Documents, and in accordance with the Budget.

12.    Adequate Protection Liens.

(a)    *Prepetition Term Loan Adequate Protection Liens.* Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any

33

Diminution in Value of such interests during the Cases, the Debtors hereby grant to each

Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Secured Parties,

Prepetition Term Loan Adequate Protection Liens on the DIP Collateral having the priority set

forth in paragraph 12(d) below.

(b)    *Prepetition Revolving Credit Adequate Protection Liens.*  Pursuant to

sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the General

Reimbursement Obligations owed to the Prepetition Revolving Credit Secured Parties, the

Debtors hereby grant to the Prepetition Revolving Credit Agent for the benefit of the Prepetition

Revolving Credit Secured Parties, Prepetition Revolving Credit Adequate Protection Liens on

the DIP Collateral having the priority set forth in paragraph 12(d) below.

(c)    *Prepetition Vendor Adequate Protection Liens.*  Pursuant to sections 361,

363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of each

Prepetition Secured Vendor in the Shared Collateral against any Diminution in Value of such

interests during the Cases, the Debtors hereby grant to each Prepetition Secured Vendor

Prepetition Vendor Adequate Protection Liens on the DIP Collateral that would be of the kind

that would fall within the meaning of "Shared Collateral" having the priority set forth in

paragraph 12(d) below.

(d)    *Priority of Adequate Protection Liens.*  The Prepetition Term Loan

Adequate Protection Liens shall be subordinate only to the Carve Out, the DIP Revolver Liens

(solely with respect to DIP Revolver Priority Collateral), the Prepetition Revolving Credit Liens

(solely with respect to Current Asset Collateral in existence as of the Petition Date), and the

Prepetition Revolving Credit Adequate Protection Liens (solely with respect to DIP Revolver

Priority Collateral).  The Prepetition Revolving Credit Adequate Protection Liens shall be

34

subordinate only to the Carve Out, the DIP Term Loan Liens (solely with respect to DIP Term Loan Priority Collateral), the Prepetition Term Loan Liens (solely with respect to Fixed Asset Collateral in existence as of the Petition Date), and the Prepetition Term Loan Adequate Protection Liens (solely with respect to the DIP Term Loan Priority Collateral). The Prepetition Vendor Adequate Protection Liens shall be subordinate to the Carve Out, the DIP Term Loan Liens, the DIP Revolver Liens, the Prepetition Term Loan Liens, the Prepetition Revolving Credit Liens, and the Prepetition Adequate Protection Liens. Except as provided herein, the Prepetition Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest in the Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or upon the dismissal of any of the Cases.

13. Adequate Protection Superpriority Claims.

(a) *Superpriority Claims of Prepetition Term Loan Lenders*. As further adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests during the Cases, the Prepetition Term Loan Secured Parties are each hereby granted, to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases (the "Prepetition Term Loan Adequate Protection Superpriority Claim").

(b) *Superpriority Claims of Prepetition Revolving Credit Lenders*. As further adequate protection of the interests of the Prepetition Revolving Credit Secured Parties with respect to the General Reimbursement Obligations, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Revolving Credit Secured Parties are each hereby granted an allowed superpriority administrative expense claim in each of the Cases (the "Prepetition Revolving Credit Adequate Protection Superpriority Claim" and together with the Prepetition Term Loan

Adequate Protection Superpriority Claim, the "<u>Prepetition Adequate Protection Superpriority</u> <u>Claims</u>").

(c)    *Priority of Adequate Protection Superpriority Claims.*  The Prepetition Term Loan Adequate Protection Superpriority Claim shall be junior to the Carve Out, the DIP Revolver Superpriority Claim, and the DIP Term Loan Superpriority Claim, and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code.  The Prepetition Revolving Credit Adequate Protection Superpriority Claim shall be junior to the Carve Out, the DIP Revolver Superpriority Claim, and the DIP Term Loan Superpriority Claim and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code.

<u>Provisions Common to DIP Financing and Use of Cash Collateral Authorizations</u>

14.    <u>Amendments of the DIP Documents</u>. The Debtors and the applicable Requisite Lenders may in accordance with the DIP Documents enter into any amendments or modifications to the DIP Documents without the need of further notice and hearing or order of this Court, provided that (i) such modifications or amendments do not materially and adversely affect, in the reasonable view of the Debtors, the rights of any creditor or other party-in-interest, (ii) notice of any such amendment or modification is filed with the Court, and (iii) notice of such amendment or modification (other than those which in the reasonable view of the Debtors is ministerial), if any, is provided in advance to the U.S. Trustee and to all parties having filed a notice of appearance pursuant to Bankruptcy Rule 2002 that was entered on the docket prior to the date of the filing of such amendment or modification with the Bankruptcy Court.

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

15.    <u>Budget Maintenance; Reserves</u>.  The Borrower shall deliver to the DIP Agents and the DIP Lenders on the Closing Date of the DIP Facilities and on a weekly basis thereafter a thirteen (13) week cash flow forecast (a "<u>Budget</u>") setting forth for the periods covered thereby in form and substance reasonably satisfactory to the DIP Agents (i) the projected weekly sales, operating cash receipts and resulting cash balances, (ii) the projected weekly operating cash disbursements, (iii) the projected aggregate principal amount of "Revolving Credit Outstandings" (as defined in the DIP Documents), and (iv) projected weekly Excess Availability (as defined in the DIP Documents) in accordance with Section 5.1 (s) of the DIP Term Loan Agreement and Section 5.1(t) of the DIP Revolver Agreement.  The DIP Revolver Collateral Agents may from time to time establish "Reserves" (as defined in the DIP Revolver Agreement), including a reserve in an amount equal to the Carve Out (the "<u>Carve Out Reserve</u>"), in accordance with the DIP Revolver Agreement.  The Budget may be amended or modified in writing on the Closing Date or from time to time only with the written consent of the DIP Agents and the applicable Requisite Lenders.

16.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation: (a) to permit the Debtors to grant the DIP Liens, the Prepetition Adequate Protection Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Superpriority Claims, and the Prepetition Vendor Adequate Protection Liens; (b) to permit the Debtors to incur all liabilities and obligations to the DIP Agents on behalf of the DIP Secured Parties and to the Prepetition Agents on behalf of the Prepetition Secured Parties; and (c) to authorize the Debtors to pay to the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, and for the DIP Agents, the DIP Lenders, the

37

Prepetition Agents and the Prepetition Lenders to receive and apply, amounts referred to, required under, in accordance with and subject to this Interim Order.

17.     Perfection of DIP Liens and Adequate Protection Liens.

(a)     *Automatic Perfection of Liens.* This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the DIP Liens, the Prepetition Adequate Protection Liens, and the Prepetition Vendor Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, landlord waiver, bailee waiver or warehouseman waiver, collateral access agreement, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Prepetition Adequate Protection Liens, or the Prepetition Vendor Adequate Protection Liens or to entitle the DIP Agents on behalf of the DIP Secured Parties and the Prepetition Agents on behalf of the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, the DIP Agents, Prepetition Agents, and each Prepetition Secured Vendor are each authorized to file, as each in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, the Prepetition Adequate Protection Liens, and the Prepetition Vendor Adequate Protection Liens and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, Prepetition Adequate Protection Liens or Prepetition Vendor Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon

38

demand to any of the DIP Agents or any Prepetition Agents all such financing statements,
mortgages, control agreements, notices and other documents as such DIP Agents or Prepetition
Agents may reasonably request. Each of the DIP Agents and Prepetition Agents, in its discretion,
may file a photocopy of this Interim Order as a financing statement with any filing or recording
office or with any registry of deeds or similar office, in addition to or in lieu of such financing
statements, notices of lien or similar instrument.

        (b)    *Agent and Bailee for Purposes of Perfection.* Until the payment in full in
cash of the DIP Obligations, (i) all DIP Collateral that for purposes of perfecting the security
interests granted in such DIP Collateral is perfected by "possession" (as defined in the Uniform
Commercial Code (the "UCC")) shall be delivered to the Control Agent (as defined below) and
(ii) all DIP Collateral that for purposes of perfecting the security interests granted in such DIP
Collateral is perfected by "control" (as defined in the UCC) shall be under the control of the
Control Agent. Notwithstanding the terms of any of the DIP Documents, the documentation
delivered in connection with such DIP Collateral shall be in form and substance reasonably
satisfactory to the Control Agent without the necessity of obtaining consent of the other DIP
Agents. Until the payment in full in cash of the DIP Revolver Obligations, the DIP Revolver
Administrative Agent shall be the Control Agent for the purpose of perfecting the security
interests granted in any DIP Collateral by possession or control pursuant to the DIP Documents
(the "Control Agent"). Following the payment in full in cash of the DIP Revolver Obligations,
the DIP Term Loan Agent shall be the Control Agent for the purpose of perfecting the security
interests granted in any DIP Collateral by possession or control pursuant to the DIP Term Loan
Documents. Each Control Agent shall (i) hold the DIP Collateral that is in its "possession" or
"control" (as defined in the UCC) (or in the possession or control of its agents or bailees) as

39

agent or as bailee, as the case may be, and on behalf of and for the benefit of the applicable DIP

Secured Parties, and (ii) be the agent of the applicable DIP Secured Parties, with respect to the

DIP Collateral that is perfected by control as defined in the UCC.  The duties of the applicable

Control Agent shall be limited solely to physically holding such DIP Collateral delivered to or

under the control of such Control Agent as agent for the other DIP Agents for purposes of

perfecting the applicable DIP Lien held by the other DIP Agents and the DIP Lenders.  Upon any

of the DIP Agents ceasing to act as Control Agent as provided herein, such DIP Agents shall, at

the expense of the Debtors, use commercially reasonable efforts to transfer any DIP Collateral

then in its possession or under its control to the successor Control Agent.  No Control Agent

shall have any obligation whatsoever to the DIP Agents or DIP Lenders to ensure that the DIP

Collateral in its possession or under its control is genuine or owned by the Debtors or to preserve

the rights or benefits of any Person except as provided in this paragraph 17.

18.    Application of Proceeds of DIP Collateral.  As a condition to the entering into the

DIP Documents, the extending of credit under the DIP Facilities and the authorizing to use Cash

Collateral, the Debtors have agreed that the proceeds of DIP Collateral shall be applied in a

manner consistent with the terms and conditions of the DIP Documents, and to the extent not

modified by the DIP Documents or this Interim Order, the Intercreditor Agreement.

19.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with

enlarged powers, any responsible officer or any other estate representative subsequently

appointed in these Cases shall obtain credit or incur debt pursuant to Bankruptcy Code sections

364(b), 364(c) or 364(d) in violation of the DIP Documents it shall be an immediate Event of

Default and the DIP Agents shall have the rights and remedies under paragraph 25 below.

40

20.     <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations, the cancellation, backing, or cash collateralization of letters of credit under the DIP Revolver Facility, and the termination of the DIP Agents' and the DIP Lenders' obligation to extend credit under the DIP Facilities, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facilities and (b) maintain the cash management system as required by the DIP Documents.

21.     <u>Disposition of DIP Collateral; Rights of DIP Agents and DIP Lenders</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Lenders required under the DIP Documents, except for sales of inventory in the ordinary course of business or except as otherwise provided in the DIP Documents and this Interim Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law.

22.     <u>Access to DIP Collateral</u>.

(a)     *Access to Landlords.*  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents on behalf of the DIP Secured Parties contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, upon three (3) business days' written notice to the landlord of any leased premises upon which any DIP Collateral is located (a "<u>Landlord</u>"), that an Event of Default or a default by the Debtors of any of their obligations under the DIP Documents or this Interim Order has occurred and is continuing, the DIP Agents may, subject to any separate agreement by and between such Landlord and the DIP Agents and/or the DIP Lenders, enter upon any leased premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and

**41**

privileges as lessee under such lease without interference from the Landlord thereunder. The DIP Agents and the DIP Lenders shall be entitled to all the rights and privileges with respect to the DIP Collateral as any of the Prepetition Secured Parties may have under any agreement with such Landlord which permits any such party access to the Prepetition Collateral, as if the DIP Agents and DIP Lenders were parties to such agreement. Nothing herein shall require the Debtors to assume and assign to the DIP Agents on behalf of the DIP Secured Parties any lease under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agents in this paragraph.

(b)    *Access to Warehouses.* Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents on behalf of the DIP Secured Parties contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, upon three (3) business days' written notice to the warehouseman of any premises upon which any DIP Collateral is located (a "Warehouse"), that an Event of Default or a default by the Debtors of any of their obligations under the DIP Documents or this Interim Order has occurred and is continuing, the DIP Agents may, subject to any separate agreement by and between the warehouseman with respect to such Warehouse and the DIP Agents and/or the DIP Lenders, enter upon any premises for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges under such warehouseman agreement without interference from the warehouseman with respect to such Warehouse. The DIP Agents and the DIP Lenders shall be entitled to all the rights and privileges with respect to the DIP Collateral as any of the Prepetition Secured Parties may have under any agreement with such warehouseman which permits such party access to the Prepetition Collateral, as if the DIP Agents and DIP Lenders were parties to

42

such agreement. Nothing herein shall require the Debtors to assume and assign to the DIP

Agents on behalf of the DIP Secured Parties any warehouseman agreement under section 365(a)

of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agents on behalf of

the DIP Secured Parties in this paragraph.

23.     Revolving Commitment Termination Date and Term Loan Maturity Date.

(a)     *Revolving Commitment Termination Date.* On the Revolving

Commitment Termination Date, (i) all DIP Revolver Obligations shall be immediately due and

payable, and all commitments to extend credit under the DIP Revolver Facility shall terminate,

and all letters of credit outstanding shall be cash collateralized, backed by a letter of credit

acceptable to the issuing bank or cancelled, and (ii) all authority to use Cash Collateral derived

from the proceeds of DIP Collateral shall cease, provided, however, that during the Remedies

Notice Period, the Debtors may use the Cash Collateral (if any) that is in a deposit account of the

Debtor at the time of the commencement of the Remedies Notice Period solely as set forth in

paragraph 11 above.

(b)     *Term Loan Maturity Date.* On the Term Loan Maturity Date, all DIP

Term Loan Obligations shall be immediately due and payable and, as set forth in the DIP Term

Loan Documents, authority to use Cash Collateral derived from the proceeds of DIP Collateral

shall cease, provided, however, that during the DIP Term Loan Remedies Notice Period, the

Debtors may use Cash Collateral in accordance with paragraph 11 above.

24.     Event of Default. The occurrence of an Event of Default under any of the DIP

Documents or defined herein shall constitute an event of default under this Interim Order, unless

waived in writing by the Requisite Lenders, as applicable ("Event of Default").

⌐ in accordance with the DIP
         Documents,

43

MSW -

25.    <u>Rights and Remedies Upon Event of Default</u>.

(a)    *DIP Revolver Facility.*  Immediately upon the occurrence and during the

continuation of an Event of Default, the DIP Revolver Administrative Agent may declare (i) all

DIP Revolver Obligations owing under the DIP Revolver Documents to be immediately due and

payable; (ii) the termination, reduction or restriction of any further commitment to extend credit

to the Debtors to the extent any such commitment remains; (iii) the termination of the DIP

Revolver Agreement and any other DIP Revolver Documents as to any future liability or

obligation of the DIP Revolver Agents or the DIP Revolver Lenders, but without affecting any of

the DIP Revolver Liens or the DIP Revolver Obligations; and/or (iv) a termination, reduction or

restriction on the ability of the Debtors to use any Cash Collateral derived from DIP Collateral,

except as provided in paragraph 11 above.  The DIP Revolver Obligations shall be due and

payable, without notice or demand, and the use of Cash Collateral shall automatically cease on

an Event of Default, except as provided in paragraphs 11, 23, and 25.  Any automatic stay

otherwise applicable to the DIP Revolver Secured Parties is hereby modified so that three (3)

business days after the Event of Default (the "<u>Remedies Notice Period</u>"), the DIP Revolver

Administrative Agent on behalf of the DIP Revolver Secured Parties shall be entitled to exercise

all rights and remedies in accordance with the DIP Revolver Documents and this Interim Order

and shall be permitted to satisfy the DIP Revolver Superpriority Claims and the DIP Revolver

Liens, subject to the Carve Out.  During the Remedies Notice Period, the Debtors and any

official committee appointed in the Cases shall be entitled to seek an emergency hearing with the

Court for the sole purpose of contesting whether an Event of Default has occurred and/or is

continuing.  Unless the Court determines during the Remedies Notice Period that an Event of

Default has not occurred and/or is not continuing, the automatic stay shall automatically be

terminated at the end of the Remedies Notice Period without further notice or order and the DIP

Revolver Administrative Agent on behalf of the DIP Revolver Secured Parties shall be permitted

to exercise all remedies set forth herein, in the DIP Revolver Agreement, the DIP Revolver

Documents, and as otherwise available at law against the DIP Collateral, without further order of

or application or motion to the Court, and without restriction or restraint by any stay under

sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens

and security interest in the DIP Collateral or any other rights and remedies granted to the DIP

Revolver Administrative Agent on behalf of the DIP Revolver Secured Parties with respect

thereto pursuant to the DIP Revolver Agreement, DIP Revolver Documents, or this Interim

Order.  Until the payment in full in cash of the DIP Term Loan Obligations, unless the DIP Term

Loan Agent otherwise agrees, the DIP Revolver Administrative Agent shall not take any action

to enforce its liens and security interest or any other rights and remedies granted to the DIP

Revolver Administrative Agent on behalf of the DIP Secured Parties pursuant to the DIP

Revolver Agreement, DIP Revolver Documents, or this Interim Order in the DIP Term Loan

Priority Collateral.

        (b)    *DIP Term Loan Facility*.  Immediately upon the occurrence and during the

continuation of an Event of Default, the DIP Term Loan Agent may declare (i) all DIP Term

Loan Obligations owing under the DIP Term Loan Documents to be immediately due and

payable; (ii) the termination, reduction or restriction of any further commitment to extend credit

to the Debtors to the extent any such commitment remains; (iii) the termination of the DIP Term

Loan Agreement and any other DIP Term Loan Documents as to any future liability or

obligation of the DIP Term Loan Agent or the DIP Term Loan Lenders, but without affecting

any of the DIP Term Loan Liens or the DIP Term Loan Obligations; and/or (iv) a termination,

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

reduction or restriction of the ability of the Debtors to use Cash Collateral derived from the DIP

Collateral, except as provided in paragraph 11 above. The DIP Term Loan Obligations shall be

due and payable, without notice or demand, and the use of Cash Collateral shall automatically

cease on an Event of Default, except as provided in paragraph 11, 23, and 25. Any automatic

stay otherwise applicable to the DIP Term Loan Secured Parties is hereby modified so that three

(3) business days after the Event of Default (the "DIP Term Loan Remedies Notice Period"), the

DIP Term Loan Agent on behalf of the DIP Term Loan Secured Parties shall be entitled to

exercise all rights and remedies in accordance with the DIP Term Loan Documents and this

Interim Order and shall be permitted to satisfy the DIP Term Loan Superpriority Claims and the

DIP Term Loan Liens, subject to the Carve Out. During the DIP Term Loan Remedies Notice

Period, the Debtors and any official committee appointed in the Cases shall be entitled to seek an

emergency hearing with the Court for the sole purpose of contesting whether an Event of Default

has occurred and/or is not continuing. Unless the Court determines during the DIP Term Loan

Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the

automatic stay shall automatically be terminated at the end of the DIP Term Loan Remedies

Notice Period without further notice or order and the DIP Term Loan Agent on behalf of the DIP

Term Loan Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP

Term Loan Agreement, the DIP Term Loan Documents, and as otherwise available at law

against the DIP Collateral, without further order of or application or motion to the Court, and

without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or

otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any

other rights and remedies granted to the DIP Term Loan Secured Parties with respect thereto

pursuant to the DIP Term Loan Agreement, DIP Term Loan Documents, or this Interim Order.

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

Until the payment in full in cash of the DIP Revolver Obligations, unless the DIP Revolver Agents otherwise agree, the DIP Term Loan Agent shall not take any action to enforce its liens and security interest or any other rights and remedies granted to the DIP Term Loan Secured Parties pursuant to the DIP Term Loan Agreement, DIP Term Loan Documents, or this Interim Order in the DIP Revolver Priority Collateral.

26.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Each of the DIP Secured Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, to the extent provided by section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Secured Parties at the time the advances were made or the liens, claims or priorities were authorized and/or created.  Any liens or claims granted to the DIP Agents on behalf of the DIP Secured Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order after due notice had been

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

given to the DIP Secured Parties at the time the advances were made or the liens, claims or priorities were authorized and/or created.

27. <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay all reasonable out-of-pocket expenses of the DIP Agents, the DIP Lenders, and the other DIP Secured Parties in connection with the DIP Facilities, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agents, the DIP Lenders, and the other DIP Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines. Copies of invoices submitted to the Debtors by the professionals for the DIP Agents, DIP Lenders, and the other DIP Secured Parties shall be forwarded by the Debtors to the U.S. Trustee, and such parties as the Court may direct.

28. <u>Proofs of Claim</u>. Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in any of the Cases shall not apply to any of the DIP Secured Parties or any of the Prepetition Secured Parties.

29. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Revolver Agents, DIP Lenders, DIP Term Loan Agent, and DIP Term Loan Collateral Agent under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Revolver Agents, DIP Lenders, DIP Term Loan Agent, and DIP Term Loan Collateral Agent access to the Debtors' premises and their books and records in accordance with the DIP Documents upon reasonable

48

prior notice (no such notice shall be required if an Event of Default has occurred or is continuing), and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Revolver Agents, the DIP Term Loan Agent, the DIP Term Loan Collateral Agent, and the DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any loan party. In addition, the DIP Revolver Agents shall use commercially reasonable efforts to provide the DIP Term Loan Agent and DIP Term Loan Collateral Agent (and the DIP Term Loan Agent and DIP Term Loan Collateral Agent shall use commercially reasonable efforts to provide the DIP Revolver Agents) with prior notice of any inspection or audit so that the other party may accompany such party on any inspection or audit, and the DIP Revolver Agents, DIP Term Loan Agent, and DIP Term Loan Collateral Agent are hereby expressly permitted to and shall provide copies of any such reports of test verifications and counts or audits to the other party, however any failure to so provide such reports shall not (i) alter the rights and obligations of the DIP Revolver Agents, DIP Term Loan Agent, DIP Term Loan Collateral Agent or give rise to any claim or cause of action related thereto, (ii) be deemed a breach of the DIP Documents, or (iii) give rise to any claim or cause of action by the DIP Term Loan Agent and/or the DIP Term Loan Collateral Agent against the DIP Revolver Agents or the DIP Revolver Agents against the DIP Term Loan Agent and/or the DIP Term Loan Collateral Agent, as the case may be.

49

MSW -

30.    <u>Carve Out</u>.

(a)    *Carve Out*. As used in this Interim Order, the "<u>Carve Out</u>" means the

following expenses: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and

statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) in the

event of an occurrence and during the continuance of an Event of Default, the "<u>Case</u>

<u>Professionals Carve Out</u>," comprised of the sum of (A) all allowed unpaid fees, expenses, and

disbursements (regardless of when such fees, expenses, and disbursements become allowed by

order of the Court) for any professionals retained by the Debtors pursuant to section 327 of the

Bankruptcy Code or any professionals retained by an official committee appointed in the Cases

and retained by final order of the Court (collectively, the "<u>Case Professionals</u>") incurred

subsequent to receipt of notice delivered by either the DIP Term Loan Agent or DIP Revolver

Administrative Agent to counsel for the Debtors following the occurrence of an Event of Default

expressly stating that the Carve Out has been invoked (a "<u>Carve Out Trigger Notice</u>") in an

aggregate amount not in excess of $2,000,000 (the "<u>Carve Out Cap</u>"), plus (B) all unpaid

professional fees, expenses, and disbursements of such Case Professionals incurred prior to the

receipt of the Carve Out Trigger Notice to the extent previously or subsequently allowed

pursuant to an order of the Court (collectively, the "<u>Allowed Professional Fees</u>") under sections

328, 330 and/or 331 of the Bankruptcy Code; <u>provided, however</u>, in the case of clause (B), solely

to the extent such fees, expenses and disbursements were incurred in accordance with the Budget

(as the such fees, expenses and disbursements provided for in the Budget may be increased by

prior notice from the Borrower or its counsel to the DIP Term Loan Agent and the DIP Revolver

Administrative Agent). The Case Professionals Carve Out is subject to the limitations contained

**50**

MSW -

in paragraph 31 below and the Carve Out Reserve, which will be a reserve against the borrowing base under the DIP Revolver Agreement

      (b)    *No Direct Obligation to Pay Professional Fees.* The DIP Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Secured Parties, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the Carve Out Cap if actual Allowed Professional Fees relating to fees, expenses and disbursements incurred subsequent to receipt of the Carve Out Trigger Notice are higher in fact than the Carve Out Cap.

      (c)    *Payment of Allowed Professional Fees Prior to the Event of Default.* Prior to the Event of Default, the Debtors shall be permitted to pay Allowed Professional Fees that were incurred to the extent provided in the Budget and such payments shall not reduce the Carve Out.

      (d)    *Payment of Carve Out After Event of Default and Carve Out Trigger Notice.* Any payment or reimbursement made on or after an Event of Default in respect of any Allowed Professional Fees incurred subsequent to receipt of the Carve Out Trigger Notice (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the Case Professionals Carve Out Cap on a dollar-for-dollar basis.

    31.    <u>Limitations on the DIP Facilities, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out</u>. The DIP Facilities, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out may not be used:

51

(a)    in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Prepetition Secured Parties or the DIP Secured Parties or their rights and remedies under the DIP Documents, the Prepetition Documents, or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief; (ii) to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition Obligations; (iii) for monetary, injunctive or other affirmative relief against any of the DIP Secured Parties or any of the Prepetition Secured Parties or their respective collateral; (iv) to prevent, hinder or otherwise delay the exercise by the DIP Secured Parties of any of their respective rights and remedies under this Interim Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Secured Parties upon any of the DIP Collateral; (v) to object to or challenge in any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf of any of the Prepetition Secured Parties or the DIP Secured Parties; (vi) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Parties or any of the DIP Secured Parties if any; or (vii) to prevent, hinder or otherwise delay the exercise by the Prepetition Secured Parties of any rights and remedies granted under this Interim Order;

(b)    to make any distribution under a plan of reorganization in any Case;

52

MSW -

(c)      to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Revolver Agents and the DIP Term Loan Agent unless otherwise ordered by this Court;

(d)      to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Revolver Agents and the DIP Term Loan Agent;

(e)      to object to, contest, or interfere in any way with the DIP Secured Parties' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred;

(f)      to sell or otherwise dispose of DIP Collateral (or use or seek to use Cash Collateral) without the consent of the applicable DIP Secured Parties;

(g)      to seek any insurance proceeds constituting DIP Collateral without the consent of the applicable DIP Secured Parties; or *or a committee, if one is appointed by the Court,*

(h)      to incur indebtedness outside the ordinary course of business without the prior consent of the DIP Secured Parties, except as permitted under the DIP Documents. Notwithstanding the foregoing, the DIP Facilities, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate, incurred by any person or entity granted standing by the Court to investigate and/or commence, as appropriate, a contested matter or adversary proceeding challenging the validity, enforceability, perfection or priority of the Prepetition Liens and Prepetition Obligations (a "Challenge"). If no such Challenge is filed ~~within the earlier of (i)~~ *before the deadline for objections to Confirmation of the Plan unless* ~~two days prior to the hearing on confirmation of the Plan and (ii) within the minimum amount of~~ *such date is extended* ~~time set forth in Local Rule 4001-2(a)(i)(B),~~ the Prepetition Liens are deemed final and allowed for all purposes. In the event no Challenge is filed, or any Challenge that is filed is denied, the → *by consent of the DIP Lenders or so ordered by the Court,*

Prepetition Obligations shall be deemed allowed in full, shall not be subject to setoff,

counterclaim or defense of any kind or nature, the Prepetition Liens shall be deemed valid,

perfected, enforceable and non-avoidable, and the Prepetition Secured Parties shall be deemed

released and discharged from any and all claims and causes of action arising under the

Prepetition Documents. *Nothing in this Interim Order limits or otherwise affects Court's ability to order an appropriate remedy in the event of a Successful Challenge.*

32.    <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the

allowance of any professional fees or expenses of any Case Professionals or shall affect the right

of the DIP Secured Parties to object to the allowance and payment of such fees and expenses. So

long as no Event of Default has occurred and/or is continuing, the Debtors shall be permitted to

pay fees and expenses allowed and payable by final order (that has not been vacated or stayed,

unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the

same may be due and payable.

33.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

34.    <u>Section 506(c) Claims</u>. In light of their agreement to subordinate their liens and

superpriority claims and their agreement to fund the payment to the vendors, upon entry of the

Final Order providing such relief, none of the DIP Secured Parties or the Prepetition Secured

Parties shall bear any costs or expenses of administration which have been or may be incurred in

the Cases pursuant to sections 105 or 506(c) of the Bankruptcy Code, without the prior written

consent of the applicable DIP Secured Parties or Prepetition Secured Parties, and no such

consent shall be implied from any other action, inaction, or acquiescence by any such parties.

MSW -

35.    <u>No Marshaling/Applications of Proceeds</u>. None of the DIP Secured Parties or any of the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

36.    <u>Section 552(b)</u>. In light of their agreement to subordinate their liens and superpriority claims and their agreement to fund the payment to the vendors, each of the DIP Secured Parties and each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

37.    <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facilities and the DIP Documents.

38.    <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash. Except for the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, dated April 25, 2009 (the "<u>Plan</u>") (without giving effect to any amendments, modifications or supplements unless consented to by the DIP Secured Parties), none of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or

55

entry of any confirmation order or sale order that is not conditioned upon the payment in full in

cash, on the effective date of such plan of reorganization of all DIP Term Loan Obligations and

all DIP Revolver Obligations and the cancellation, backing, or cash collateralization of all letters

of credit issued under the DIP Revolver Documents.

39.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of

this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) any of the DIP Secured Parties' right to seek any other or supplemental relief in

respect of the Debtors, or (b) any of the rights of any of the DIP Secured Parties under the

Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to

(i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request

dismissal of any of the Cases, conversion of any of the Cases to cases under Chapter 7, or

appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject

to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other than

as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal,

equitable or otherwise) of each of the DIP Secured Parties are preserved.

40.     No Waiver by Failure to Seek Relief.  Neither the entry of this or any other order,

the consent of the DIP Secured Parties or the Prepetition Secured Parties thereto, nor any

exercise or failure to exercise any right and remedy under any agreement, order, or applicable

law, as the case may be, shall constitute a waiver of any such right or remedy.

41.     Binding Effect of Interim Order.  Immediately upon entry by this Court

(notwithstanding any applicable law or rule to the contrary), the terms and provisions of this

Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the

DIP Secured Parties, the Prepetition Secured Parties, all other creditors of any of the Debtors, or

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

any court-appointed committee in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, or upon dismissal of any Case.

42.    No Modification of Interim Order.    Until and unless the DIP Obligations have been paid in full in cash, and all letters of credit under the DIP Revolver Facility shall have been cancelled, backed by letters of credit acceptable to the issuing bank, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: ~~(a)~~ without the prior written consent of ~~the Requisite Lenders~~ (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out; (b) ~~without the prior written consent of the Requisite Lenders,~~ any order allowing use of Cash Collateral resulting from DIP Revolver Priority Collateral or DIP Term Loan Priority Collateral, as applicable; and (c) ~~without the prior written consent of the Requisite Lenders, as applicable,~~ any lien on any of the DIP Collateral with priority equal or superior to the DIP Revolver Liens or DIP Term Loan Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the applicable DIP (in amount) with respect to the DIP Revolver Lenders, a Supermajority of the DIP Revolver Lenders, and, with respect to the DIP Term Loan Lenders, a Supermajority of the DIP Term Loan Lenders (in each case as "Supermajority" is defined by the applicable DIP Documents):

Agents, and no such consent shall be implied by any other action, inaction or acquiescence of any of the DIP Agents.

43.     Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

44.     Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases, provided, however, that superpriority claims or other administrative expenses shall survive only to the extent permitted by applicable law.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, or following dismissal of the Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all letters of credit under the DIP Facilities shall have been cancelled or cash collateralized in accordance with the terms thereof and all commitments to extend credit under the DIP Facilities are terminated.  The terms and provisions concerning the indemnification of the DIP Secured Parties shall continue in the Cases, following dismissal of the Cases, following termination of the DIP Documents and/or the repayment of the DIP Obligations.

45.     Final Hearing.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facilities is scheduled for May 28, 2009 at 2:30 pm, before the Honorable (prevailing Eastern Time)

58

Gross , United States Bankruptcy Judge, in Courtroom 3 at the United States Bankruptcy Court for the District of Delaware. On or before May 1, 2009 , the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; and (b) any party which has filed prior to such date a request for notices with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on May 21 , 2009 at 4:00 PM (Prevailing Eastern Time) (Eastern), which objections shall be served so as to be received on or before such date by: (i) proposed co-counsel to the Debtors, attn: David L. Eaton, David A. Agay and Paul Wierbicki , Esq., Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654; (ii) proposed co-counsel to the Debtors, attn: Laura Davis Jones and Timothy P. Cairns, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801); (iii) counsel to the DIP Agents, attn: J. Gregory Milmoe, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036; (iv) counsel to the Prepetition Agents, attn: J. Gregory Milmoe, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036; (v) the Office of the U.S. Trustee for the District of Delaware; (vi) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; and (viii) the trustee for the Debtors' 11.25% Secured Unsecured Notes due 2015.

1450267.19-New York Server 7A
DOCS_DE:147586.2

MSW -

46.    <u>Effect of this Interim Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

47.    <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Court this **29th** day of **April**, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE

60