# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SOURCE INTERLINK COMPANIES, INC., et al.,[1] | Case No. 09-11424 (KG) |
| Debtors. | Jointly Administered<br>*Re Dkt #203* |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (WITH TECHNICAL AMENDMENTS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:[2]

a.   commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") on April 27, 2009 (the "Petition Date");

b.   continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Source Interlink Companies, Inc. (8299); AEC Direct, LLC (1003); Automotive.com, LLC (2610); Canoe & Kayak, Inc. (5510); Directtou, Inc. (4741); Enthusiast Media Subscription Company, Inc. (1137); Motor Trend Auto Shows, LLC (5888); RDS Logistics, LLC (0305); Source-Chestnut Display Systems, Inc. (6446); Source Home Entertainment, Inc. (8517); Source Interlink Distribution, LLC (3387); Source Interlink International, Inc. (1428); Source Interlink Magazines, LLC (3601); Source Interlink Manufacturing, LLC (7123); Source Interlink Media, LLC (4935); Source Interlink Retail Services, LLC (6967); Source Mid Atlantic News, LLC (7108); The Interlink Companies, Inc. (2991). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 27500 Riverview Center Boulevard, Suite 400, Bonita Springs, Florida 34134.

[2]   Unless otherwise noted, capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (as defined herein) and the "Rules of Interpretation" (set forth in Article I.B. of the Plan), to the extent applicable, shall apply to the Confirmation Order (as defined herein).

c.      filed, on April 28, 2009, (i) the *Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17], (ii) the *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* and (iii) the *Supplement to Disclosure Statement for the Debtors Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 21];

d.      distributed the Disclosure Statement and appropriate Ballots for voting on the Plan to Holders of Class 4 (Term Loan Claims) beginning on April 25, 2009, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), set the Voting Deadline as April 27, 2009 at 5:00 p.m. (prevailing Eastern Time), extended the Voting Deadline to April 27, 2009 at 7:00 p.m. (prevailing Eastern Time) and again extended the Voting Deadline to April 27, 2009 at 8:15 p.m. (prevailing Eastern Time) as evidenced by the *Amended Certification of Alison M. Tearnen with Respect to the Tabulation of Ballots on the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 181] (the "Voting Certification");

e.      filed, on April 28, 2009, the *Debtors' Motion for Entry of Order (A) Scheduling an Objection Deadline and Combined Hearing on Their Disclosure Statement and Plan Confirmation (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Procedures for Objections to Their Plan and Disclosure Statement, (D) Approving Solicitation Procedures and (E) Granting Related Relief* [Docket No. 18] (the "Scheduling Motion");

f.      filed, on May 1, 2009 the *Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters*, which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan, the deadline for filing objections to the Plan and Disclosure Statement, and a summary of the Plan (the "Confirmation Hearing Notice");

g.      served, pursuant to the *Order (A) Scheduling an Objection Deadline and Combined Hearing on their Disclosure Statement and Plan Confirmation, (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Procedures for Objections to their Plan and Disclosure Statement, (D) Approving Solicitation Procedures and (E) Granting Related Relief* [Docket No. 59] (the "Scheduling Order"), the Confirmation Hearing Notice in accordance with the terms of the Scheduling Order as evidenced by (i) the *Affidavit of Service of Katrina Givens* [Docket No. 88], (ii) the *Affidavit of Service of Stefanie C. Gardella re: Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters to be Held on May 28, 2009 at 2:30 p.m.*

2

*(Prevailing Eastern Time)* [Docket No. 92] and (iii) the *Affidavit of Service of Katrina Givens re: Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters; to be Held on May 28, 2009 at 2:30 p.m. (Prevailing Eastern Time)* [Docket No. 116] and (items (i), (ii) and (iii) of this paragraph, collectively, the "Confirmation Hearing Notice Affidavits");

h.    published, on May 5, 2009 in *The Wall Street Journal (National Edition)* and on May 6, 2009 in the *USA Today*, pursuant to the Scheduling Order, the Confirmation Hearing Notice, as evidenced by the *Affidavit of Publication of Antoinette Chase in USA Today* [Docket No. 122] and the *Affidavit of Publication of Erin Ostenson in The Wall Street Journal* [Docket No. 124] (collectively, the "Publication Affidavits," and together with the Confirmation Hearing Notice Affidavits, the "Notice Affidavits");

i.    filed (i) on May 14, 2009, the various documents comprising the *Plan Supplement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 136] (the "Original Plan Supplement") and (ii) on May 27, 2009, the various documents comprising the *Amended Plan Supplement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 201] (the "Amended Plan Supplement" and together with the Original Plan Supplement and as amended through the date hereof, the "Plan Supplement");

j.    filed, on May 26, 2009, (i) the *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* [Docket No. 197] (the "Disclosure Statement") and (ii) the *Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* [Docket No. 195] (as amended through the date hereof and together with the Plan Supplement, the "Plan"), attached hereto as Exhibit A;

k.    filed, on or about May 26, 2009, *Declaration of Douglas J. Bates in Support of the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* [Docket No. 199], *Declaration of Steven G. Panagos in Support of the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* [Docket No. 200] and *Declaration of John Bode in Support of the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* [Docket No. 225] (all declarations identified in this paragraph, collectively, the "Confirmation Declarations");

3

l.      filed, on May 27, 2009, the *Debtors' Memorandum of Law (I) in Support of Entry of Order (A) Approving (1) the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (2) Solicitation of Votes and Voting Procedures and (3) Forms of Ballots and (B) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments) and (II) in Response to Objections Thereto* [Docket No. 203] (the "Confirmation Brief"); and

m.      filed, on May 27, 2009, these *Findings of Fact, Conclusions of Law and Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures and (C) Forms of Ballots and (II) Confirming the Debtors' Joint Prepackaged Plan Of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments)* (together with all the exhibits hereto, the "Confirmation Order").

The Court having:

a.      entered, on April 29, 2009, the Scheduling Order;

b.      set May 28, 2009, at 2:30 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing (as defined herein) pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Certification, the Notice Affidavits, the Ballots and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements and reservations of rights;

d.      held a hearing to consider the adequacy of the Disclosure Statement and the Confirmation of the Plan on May 28, 2009 (the "Confirmation Hearing") after due and sufficient notice was given to Holders of Claims against, and Interests in, the Debtors and other parties in interest in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, in each as established by the Notice Affidavits;

e.      heard the statements, arguments and objections made by counsel in respect of Confirmation;

f.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation;

g.      overruled any and all objections (to the extent not withdrawn) to the Plan, the Disclosure Statement and Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

4

h.    taken judicial notice of all pleadings and other documents filed, all orders entered and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.    **Findings and Conclusions.**  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. § § 157(b)(2), 1334(a)).**  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Approval of the Solicitation and Solicitation Procedures (as each such term is defined herein), Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper in this District and before

5

the Court pursuant to 28 U.S.C. § § 1408 and 1409. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C. **Chapter 11 Petitions.** On the Petition Date, each Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code. The Court has ordered the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

D. **Judicial Notice, Objections.** The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements and reservations of rights are overruled on the merits.

E. **Burden of Proof.** The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

F. **Adequacy of Disclosure Statement.** The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable

6

non-bankruptcy law, rules and regulations, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein and (c) is approved in all respects.

G. **Voting.** As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule and regulation.

H. **Solicitation.** Prior to the Petition Date, the Plan, the Disclosure Statement and the Ballots, and, subsequent to the Petition Date, the Confirmation Hearing Notice, were transmitted and served in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders of Claims in the Class listed in the chart below, which lists the Class of Claims entitled under the Plan to vote to accept or reject the Plan.

| Class | Designation |
| --- | --- |
| Class 4 | Term Loan Claims |

The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for Holders of Claims entitled to vote to accept or reject the Plan to make an informed decision to accept or reject the Plan. In particular, and without limitation, (a) the Plan, the Disclosure Statement and the Ballots were transmitted to all Holders of Class 4 (Term Loan Claims), (b) sufficient and reasonable time and notice were prescribed for the Holders of Impaired Claims in Class 4 to accept or reject the Plan, (c) the Ballots submitted by the Holders of Impaired Claims in Class 4 (whether before or after the commencement of the Chapter 11

7

Cases) were submitted by the Holders of record of the Impaired Claims in Class 4 on April 16, 2009 (the date specified in such documents for the purpose of the solicitation) (the "Record Date") and (d) the establishment and notice of the Record Date was appropriate and reasonable. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims or Interests in the Classes listed in the chart below as each such Class is Unimpaired under the Plan and conclusively presumed to have accepted the Plan.

| Class | Designation | |
|---|---|---|
| Class 1 | Other Priority Claims | |
| Class 2 | Other Secured Claims | |
| Class 3 | Revolving Credit Facility Claims | |
| Class 6 | General Unsecured Claims | |
| Class 7 | Intercompany Claims | |
| Class 8 | Intercompany Interests | |

The Debtors also were not required to solicit votes from the Holders of Claims or Interests in each Class listed in the chart below, as each such Class receives no recovery from the Debtors under the Plan, is impaired and, therefore, is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

| Class | Designation | |
|---|---|---|
| Class 5 | Senior Notes Claims | |
| Class 9 | Section 510(b) Claims | |
| Class 10 | Equity Interests in Source Interlink Companies | |

As described in and as evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the Confirmation Hearing Notice and publication of such Confirmation Hearing Notice (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Plan complied with the solicitation procedures set forth in the Scheduling Motion and approved in the Scheduling Order (the "Solicitation Procedures"), was appropriate and

8

satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws, and regulations. The Debtors, the Reorganized Debtors, the Term Loan Agents, the Term Loan Lenders, the Revolving Credit Facility Agents, the Revolving Credit Facility Lenders, the DIP Agents, the DIP Lenders and the Holders of the Senior Notes and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys and advisors of each of the foregoing that may have solicited votes on the Plan or participated in the formulation of the Plan, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are entitled to the protections of section 1125(e) of the Bankruptcy Code.

I.     **Notice.** As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule and regulation and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.     **Plan Supplement.** The Debtors' Plan Supplement includes the following documents: (a) required disclosures under section 1129(a)(5) of the Bankruptcy Code; (b) the list of executory contracts and unexpired leases to be rejected; (c) the non-exclusive list of Causes of Action to be retained by the Reorganized Debtors; (d) a description of the Shareholders Agreement; (e) a description of HoldCo's acquiring and holding 100% of the

9

Reorganized Source Interlink Companies Equity Interests; and (f) amended certificates of incorporation and by-laws or descriptions thereof. All such materials comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is or shall be required.

K. **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L. **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** In addition to Administrative Claims (Article II.B. of the Plan), Priority Tax Claims (Article II.C. of the Plan) and DIP Facility Claims (Article II.A. of the Plan), which need not be classified, Article III of the Plan classifies ten Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and such Classes do not unfairly discriminate among Holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M. **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article III of the Plan specifies that Claims or Interests listed in the chart below are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 1 | Other Priority Claims |

10

| Class | Designation |
|---|---|
| Class 2 | Other Secured Claims |
| Class 3 | Revolving Credit Facility Claims |
| Class 6 | General Unsecured Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Intercompany Interests |

N. **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article III of the Plan designates the Classes of Claims and Interests listed in the chart below as impaired and specifies the treatment of the Claims and Interests in those Classes within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 4 | Term Loan Claims |
| Class 5 | Senior Notes Claims |
| Class 9 | Section 510(b) Claims |
| Class 10 | Equity Interests in Source Interlink Companies |

O. **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

P. **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including: (a) the substantive consolidation of the Debtors for purposes of the Plan only; (b) the continued corporate existence of the Debtors; (c) HoldCo acquiring and holding 100% of the Reorganized Source Interlink Companies Equity Interests upon the Effective Date; (d) generally allowing for all corporate action necessary to effectuate the Plan, including the

11

assumption of executory contracts, appointment of the directors and officers of HoldCo and the Reorganized Debtors, execution and entry into the Exit Facility Documents, execution and entry into the HoldCo Loan Documents, execution and entry into the New Term Loan Documents and the issuance and distribution of the New Common Stock and Reorganized Source Interlink Companies Equity Interests required to be issued pursuant to the Plan; (e) the adoption and filing of the amended and restated certificates of incorporation and by-laws of the Reorganized Debtors and HoldCo; (f) the cancellation of Liens securing any Secured Claim (except Liens securing Secured Claims that are reinstated pursuant to the Plan); (g) the identification of sources of consideration from which the Debtors will make distributions under the Plan; and (h) the preservation of the Debtors' Causes of Action.

Q. **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).** The certificates of incorporation for HoldCo and the Reorganized Debtors (or descriptions thereof), filed as part of the Plan Supplement, prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

R. **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).** The Plan Supplement and Article IV.O. of the Plan contain provisions with respect to the manner of selection of directors and officers of HoldCo and the Reorganized Debtors that are consistent with the interests of creditors, equity security Holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

S. **Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article III of the Plan the Classes of Claims and Interests listed in the chart below are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

12

| Class | Designation |
|---|---|
| Class 4 | Term Loan Claims |
| Class 5 | Senior Notes Claims |
| Class 9 | Section 510(b) Claims |
| Class 10 | Equity Interests in Source Interlink Companies |

Pursuant to Article III of the Plan the Classes of Claims and Interests listed in the chart below are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 1 | Other Priority Claims |
| Class 2 | Other Secured Claims |
| Class 3 | Revolving Credit Facility Claims |
| Class 6 | General Unsecured Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Intercompany Interests |

T. **Assumption and Rejection (11 U.S.C. § 1123(b)(2)).** Article V of the Plan, governing the assumption and rejection of executory contracts and unexpired leases, and Exhibit B of the Plan Supplement meet the requirements of section 365 of the Bankruptcy Code. There have been no objections to the Debtors' assumption of executory contracts pursuant to Article V of the Plan.

U. **Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).** The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

V. **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

1. each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

13

2.       the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

3.       the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Scheduling Order and all other applicable law, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

**W.       Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).** The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) and the transactions contemplated in the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's-length among representatives of the Debtors, the Holders of Revolving Credit Facility Claims, the Holders of Term Loan Claims, and the Holders of Senior Notes Claims, and their respective professionals. Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code and are each necessary for the Debtors' successful reorganization.

14

X.      **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Y.      **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan (and HoldCo following the Effective Date) have been fully disclosed to the extent available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims and Interests and with public policy. As set forth in the Plan Supplement, on the Effective Date, the initial board of directors of HoldCo shall consist of the individuals identified in the Plan Supplement. Each such individual and each member of the board of directors of the Reorganized Debtors will serve in accordance with the terms and subject to the conditions of the certificates of incorporation and by-laws (or as set forth in the descriptions thereof) filed in the Plan Supplement and any other relevant organizational documents, each as applicable. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation also have been fully disclosed.

Z.      **No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for rate changes by any of the Reorganized Debtors or HoldCo. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

15

**AA.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).**  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The evidence, including the liquidation analysis provided in the Disclosure Statement, and otherwise submitted, proffered or adduced before or at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence and (c) establishes that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

**BB.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  The Classes of Claims and Interests listed in the chart below are Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 1 | Other Priority Claims |
| Class 2 | Other Secured Claims |
| Class 3 | Revolving Credit Facility Claims |
| Class 6 | General Unsecured Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Intercompany Interests |

The Class of Claims listed in the chart below has voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Classes do not include insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

| Class | Designation |
|---|---|
| Class 4 | Term Loan Claims |

16

The Classes of Claims and Interests listed in the chart below are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 5 | Senior Notes Claims |
| Class 9 | Section 510(b) Claims |
| Class 10 | Equity Interests in Source Interlink Companies |

While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**CC. Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims pursuant to Article II.B. of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Article II.C. of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**DD. Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** As evidenced by the Voting Certification, the Class of Claims listed in the chart below voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 4 | Term Loan Claims |

**EE. Feasibility (11 U.S.C. § 1129(a)(11)).** The information in the Disclosure Statement, the Confirmation Declarations and the evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence and (c) establishes that the Plan is feasible and that there is a reasonable prospect of the

17

Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

FF. **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Article IX of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

GG. **Continuation of Employee and Retiree Benefits (11 U.S.C. § 1129(a)(13)).** Article IV.R. of the Plan provides that all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be honored. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

HH. **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).** The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

II. **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).** The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

K&E 14589214.12

**JJ.** **No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).** The Debtors are each a moneyed, business or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**KK.** **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The Classes of Claims and Interests listed in the chart below have voted to reject, or are deemed to have rejected, the Plan.

| Class | Designation |
|---|---|
| Class 5 | Senior Notes Claims |
| Class 9 | Section 510(b) Claims |
| Class 10 | Equity Interests in Source Interlink Companies |

Based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly with respect to and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% on account of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

**LL.** **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only plan filed in each of the Debtors' chapter 11 cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**MM.** **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

K&E 14589214.12

**NN.** **Modifications to the Plan.** The modifications to the Plan made in the Amended Plan constitute technical changes or do not materially adversely affect or change the treatment of any Claims or Interests of any Holder and are in compliance with section 1127 of the Bankruptcy Code. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**OO.** **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**PP.** **Implementation.** All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and shall not be in conflict with any federal or state law.

**QQ.** **Injunction, Exculpation and Releases.** The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, releases and injunction set forth in Articles VIII.D., E., F. and H. of the Plan, respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the exculpation and unopposed releases set forth in Articles VIII.D., E., F. and H. of the Plan, respectively, when, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (a) were integral to the agreement among various parties in interest and are essential to the formulation and

implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Debtors' Estates, (c) are fair and reasonable and (d) are in the best interests of the Debtors, their Estates and other parties in interest. Further, the exculpation provision in Article VIII.F. of the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation and injunction set forth in the Plan and implemented by the Confirmation Order are supported by adequate consideration and are fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors, and their Estates, creditors and equity holders. The releases of non-Debtors in Article VIII of the Plan are fair to Holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000). Such releases are given in exchange for and are supported by fair, sufficient and adequate consideration provided by each and all of the Debtor Releasees and the Third Party Releasees. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpation and injunction provided for in Articles VIII.D., E., F. and H. of the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations and/or the evidence proffered, adduced and/or presented at the Confirmation Hearing, the Court finds that the exculpation, releases and injunction set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Plan.

**RR.** **Settlement.** Except as otherwise provided in the Plan and the Confirmation Order, the Plan is a settlement between and among the Debtors and their creditors and equity

21

holders of all claims and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of the Confirmation Order (other than the Reorganized Debtors' and HoldCo's ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Plan, including but not limited to the provisions of Articles IV.U. and VII of the Plan).

SS. **Good Faith.** The Debtors and the Reorganized Debtors, the Debtor Releasees and the Third Party Releasees will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (b) take the actions authorized and directed by the Confirmation Order.

TT. **Exit Financing.** Upon diligent inquiry, the Debtors have determined that (a) the Exit Facility to be provided by the Exit Facility Agent and Exit Facility Lenders subject to and in accordance with the term sheet describing the Exit Facility attached to the Disclosure Statement, ⌐Collectively⌐ statements made on the record and such other changes as the parties thereto may agree (the "Exit Facility Term Sheet"); (b) the New Term Loan A and the New Term Loan B (collectively, the "New Term Loans") to be provided by the lenders under the New Term Loans pursuant to and in accordance with the term sheet describing the New Term Loans attached to the Disclosure Statement, statements made on the record and such other changes as the parties thereto may ⌐Collectively⌐ agree (the "New Term Loans Term Sheet"); and (c) the HoldCo Loan to be provided by the lenders under the HoldCo Loan pursuant to and in accordance with the term sheet describing the HoldCo Loan attached to the Disclosure Statement, statements made on the record and such ⌐Collectively⌐ other changes as the parties thereto may agree (the "HoldCo Term Sheet") are the best financing alternatives available to the Debtors and the Reorganized Debtors, as the case may be. Further, for purposes of any Trade Intercreditor Agreement, (a) the Exit Facility shall constitute an

22

amendment, modification and refinancing of the Revolving Credit Facility and the DIP Revolving Credit Facility and (b) the New Term Loans shall constitute an amendment, modification and refinancing of the Term Loan.

1. *Exit Facility*. The terms of the Exit Facility have been negotiated in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the Debtors and each party thereto may rely upon the provisions of the Confirmation Order in closing the Exit Facility. The terms of the Exit Facility are substantially consistent with the terms set forth in the Exit Facility Term Sheet. The availability under the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors. The terms and conditions of the Exit Facility Documents described in the Exit Facility Term Sheet are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the Exit Facility, in accordance with the Exit Facility Term Sheet, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the Exit Facility Term Sheet and any Exit Facility Documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. The Exit Facility Documents, including the Exit Facility Agreement, and any associated fee letters,

23

Subject to the terms of any applicable intercreditor agreement entered into on or after the Effective Date along the Revolving Credit Facility Agents, the Revolving Credit Facility Lenders, the Term Loan Agents, the Term Loan Lenders, and the Reorganized Debtors.

including, without limitation, any subordination or intercreditor agreements relating thereto, shall

constitute legal, valid, binding and authorized obligations of the Reorganized Debtors

enforceable in accordance with their terms and will not conflict with any federal or state law.

The Debtors have provided sufficient and adequate notice of the terms of the Exit Facility Term

Sheet and the credit arrangements set forth therein to all parties-in-interest, including, without

limitation, the DIP Agents and DIP Lenders, the Term Loan Agents and Term Loan Lenders, the

Revolving Credit Facility Agents and Revolving Credit Facility Lenders, each Vendor (as

defined below) party to a Trade Intercreditor Agreement, and the Office of the United States

Trustee. On the Effective Date, all of the liens and security interests to be granted in accordance

with the Exit Facility Documents shall be deemed approved and shall be legal, valid, binding,

enforceable, and perfected liens on and security interests in the collateral for the Exit Facility,

having the priorities set forth in paragraph 26 below. The security interests and liens to be

granted in accordance with the Exit Facility Documents (the "Exit Liens") shall not be subject to

recharacterization or equitable subordination for any purposes whatsoever and shall not

constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the

Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the

persons granted such liens and security interests are authorized to make all filings and recordings

and to obtain all governmental approvals and consents necessary to establish and perfect such

liens and security interests under the provisions of the applicable state, provincial, federal or

other law (whether domestic or foreign) that would be applicable in the absence of the

Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and

Reorganized Debtors in connection with the Exit Facility are hereby ratified and approved. In

accordance with the terms of the Plan, proceeds from the Exit Facility shall be used to

24

indefeasibly pay in full in Cash on the Effective Date, the DIP Revolving Credit Facility Claims and any Revolving Credit Facility Claim not previously rolled up by the DIP Revolving Credit Facility. The letters of credit issued under the Revolving Credit Facility or the DIP Revolving Credit Facility which are outstanding as of the Effective Date shall be deemed to be issued under the Exit Facility.

2. *New Term Loans.* The terms of the New Term Loans have been negotiated in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the Debtors and each party thereto may rely upon the provisions of the Confirmation Order in closing the New Term Loans. The terms of the New Term Loans are substantially consistent with the terms set forth in the New Term Loans Term Sheet. The availability under the New Term Loans is necessary to the consummation of the Plan and the operation of the Reorganized Debtors. The terms and conditions of the New Term Loans described in the New Term Loans Term Sheet are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the New Term Loans, in accordance with the New Term Loans Term Sheet, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the New Term Loans Term Sheet and any New Term Loan Documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not

25

*Subject to the terms of any applicable intercreditor agreement entered into on or after the Effective Date among the Revolving Credit Facility Agents, the Revolving Credit Facility Lenders, the Term Loan Agents,* constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the

Bankruptcy Code or any other applicable non-bankruptcy law. The New Term Loan Documents, *the Term Loan Lenders, and the* including the New Term Loan Credit Agreement, any associated fee letters and any definitive loan and security documentation, including, without limitation, any subordination or intercreditor agreements relating thereto, shall constitute legal, valid, binding and authorized obligations of *Reorganized Debtors.* the Reorganized Debtors enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the New Term Loans Term Sheet and the credit arrangements set forth therein to all parties-in-interest, including, without limitation, the DIP Agents and DIP Lenders, the Term Loan Agents and Term Loan Lenders, the Revolving Credit Facility Agents and Revolving Credit Facility Lenders, each Vendor party to a Trade Intercreditor Agreement, and the Office of the United States Trustee. On the Effective Date, all of the liens and security interests to be granted in accordance with the New Term Loan Documents shall be deemed approved and shall be legal, valid, binding, enforceable, and perfected liens on and security interests in the collateral for the New Term Loans, having the priorities set forth in paragraph 26 below. The security interests and liens to be granted in accordance with the New Term Loan Documents (the "New Term Loan Liens") shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the

K&E 14589214.12

Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the New Term Loans are hereby ratified and approved. In accordance with the terms of the Plan, the DIP Term Loan Claims shall convert on the Effective Date into obligations of the Debtors under the New Term Loan A.

3. *HoldCo Loan.* The terms of the HoldCo Loan have been negotiated in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the Debtors and each party thereto may rely upon the provisions of the Confirmation Order in closing the HoldCo Loan. The terms of the HoldCo Loan are substantially consistent with the HoldCo Loan Term Sheet. The terms and conditions of the HoldCo Loan described in the HoldCo Loan Term Sheet are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration. The execution, delivery, or performance by the Debtors or HoldCo, as the case may be, of or in accordance with any documents in connection with the HoldCo Loan, in accordance with the HoldCo Loan Term Sheet, and compliance by the Debtors or HoldCo, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the HoldCo Term Sheet and any HoldCo Loan Documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. The HoldCo Loan Documents, including the HoldCo Loan Agreement, any associated fee letters and any definitive loan and security documentation, including, without limitation, any subordination or intercreditor agreements relating thereto, shall

27

constitute legal, valid, binding and authorized obligations of the HoldCo enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the HoldCo Loan Term Sheet and the credit arrangements set forth therein to all parties-in-interest, including, without limitation, the DIP Agents and DIP Lenders, the Term Loan Agents and Term Loan Lenders, the Revolving Credit Facility Agents and Revolving Credit Facility Lenders, and the Office of the United States Trustee. On the Effective Date, the pledge of the SIC Undertaking (as to be defined in the HoldCo Loan Agreement) (the "HoldCo Loan Pledge") to be granted in accordance with the HoldCo Loan Documents shall be deemed approved and shall be legal, valid, binding and enforceable and a perfected first priority pledge of the SIC Undertaking. The Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors, as the case may be, in connection with the HoldCo Loan are hereby ratified and approved.

UU. **Valuation.** Pursuant to the valuation analysis in Article VI of the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to Holders of Senior Note Claims, Section 510(b) Claims or Equity Interests in Source Interlink Companies under absolute priority principles. The valuation set forth in the Disclosure Statement was prepared by the Debtors' financial advisor, Moelis & Company LLC,

in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' business as a going concern.

**VV.    Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code, except, subsequent to the Effective Date, matters relating to the interpretation and enforcement of the Exit Facility Documents, the New Term Loan Documents and the HoldCo Loan Documents.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Notice of the Confirmation Hearing.**  Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law, and no further or additional notice was necessary or required.

3.    **Solicitation.**  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11

K&E 14589214.12

Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

4.    **Ballots.** The Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14, and are approved in all respects.

5.    **The Disclosure Statement.** The Disclosure Statement: (a) complies in all respects with any disclosure requirements of applicable non-bankruptcy law, including the Securities Act, to the extent applicable, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder. Section 4(2) of the Securities Act exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." The Debtors have complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities.

6.    **Confirmation of the Plan.** The Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of the Confirmation Order.

30

7.    **Objections.** All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

8.    **No Action Required.** Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, stockholders, managers, or members of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan and any contract, instrument or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan, including any documentation executed in connection with the Exit Facility, the New Term Loans or the HoldCo Loan.

9.    **Binding Effect.** On or after entry of the Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan and the Confirmation Order shall bind the Debtors, the Reorganized Debtors, HoldCo, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted or are deemed to have accepted the Plan), all entities that are parties to or are subject to settlements, compromises, releases, discharges and injunctions described in the Plan or herein, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases

31

and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

10.     **Free and Clear.** Pursuant to section 1141(b) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, the Reorganized Debtors and HoldCo shall be vested with all property of the Estates, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Interests. From and after the Effective Date, the Reorganized Debtors and HoldCo may operate each of their businesses and use, acquire or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court, or the Office of the United States Trustee (except for quarterly operating reports and fees associated therewith). In addition, on the Effective Date, the Reorganized Debtors and HoldCo may (a) cause the transfer of assets or Interests between or among the Reorganized Debtors and HoldCo and/or (b) engage in any other transaction in furtherance of the Plan. Specifically, without limiting the foregoing, on the Effective Date but before the effectiveness of the Plan, HoldCo shall transfer to an affiliated Reorganized Debtor any and all assets it may hold immediately prior to the Effective Date, including, without limitation, any and all contracts or agreements to which it is a party, and shall cancel, transfer or otherwise dispose of any and all liabilities it may have immediately prior to the Effective Date, such that immediately following the Effective Date, HoldCo shall hold only Reorganized Source Interlink Companies Equity Interests and shall have no liabilities other than as permitted under the Plan and the HoldCo Loan Documents.

11.     **Authorizations to Take Acts Necessary to Implement Plan.** The Debtors, the Reorganized Debtors or HoldCo as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases, leases and other agreements or documents and take

such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan (including the substantive consolidation of the Debtors as contemplated under the Plan) without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except for those expressly required pursuant to the Plan, the Exit Facility Documents, the New Term Loan Documents, and the HoldCo Loan Documents. All matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, managers or members of the Debtors, the Reorganized Debtors or HoldCo shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or members of the Debtors, or the need for any approvals, authorizations, actions or consents except as otherwise expressly required pursuant to the Plan, the Exit Facility Documents, the New Term Loan Documents, or the HoldCo Loan Documents. The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement and any documents, instruments or agreements and any amendments or modifications thereto. On the Effective Date, or as soon as thereafter as is practicable, the Reorganized Debtors and HoldCo shall file their amended certificates of incorporation or other constituent documents with the Secretary of State of Delaware, in accordance with the Delaware General Corporation Law or the Delaware Limited Liability Company Act.

K&E 14589214.12

12. **Effectiveness of All Actions.** Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to the Confirmation Order, without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except those expressly required pursuant to the Plan.

13. **Issuance of New Stock.** HoldCo is authorized to issue the New Common Stock and the Reorganized Source Interlink Companies is authorized to issue the Reorganized Source Interlink Companies Equity Interests, in each case, pursuant to the terms and conditions of the Plan. Pursuant to section 1141(b) of the Bankruptcy Code, from and after the Effective Date, HoldCo shall be vested with all Reorganized Source Interlink Companies Equity Interests, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Interests.

14. **Officers and Directors.** The structure and composition of the New Board and HoldCo's and the Reorganized Debtors' compensation of officers thereof shall be as set forth in the Plan and Plan Supplement. Each director and officer thereof shall serve from and after the Effective Date pursuant to the terms of the organizational documents set forth in the Plan Supplement or other constituent documents. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the interests of Holders of Claims and Interests and with public policy the selection, election and/or continuance, as the case may be, of these individuals; *provided* that nothing set forth herein shall prevent any of the foregoing individuals from resigning or from being removed or replaced as an officer or director without further order of the Court in accordance with the terms of HoldCo's or the Reorganized Debtors' organizational documents, as applicable. On the Effective Date (or on the Confirmation Date

34

with respect to any actions taken prior to the Effective Date), the adoption and filing (as necessary) of any of HoldCo's or the Reorganized Debtors' organizational documents not otherwise specifically set forth in the Confirmation Order or the Plan, as the case may be, and all other approvals and corporate actions contemplated by the Plan and the Confirmation Order and not otherwise specifically enumerated in the Confirmation Order shall be authorized and approved in all respects, subject to the provisions hereof and in the Plan, and any other applicable law.

15. **Compliance with Section 1123(a)(6) of the Bankruptcy Code.** The amended and restated certificates of incorporation of HoldCo and each of the Reorganized Debtors as set forth or described in the Plan Supplement comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by HoldCo and the Reorganized Debtors of such certificates of incorporation is hereby authorized, ratified and approved.

16. **Exemption from Securities Law.** The issuance of the New Common Stock and any other securities pursuant to the Plan and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy Code, any security contemplated by the Plan and any and all settlement agreements incorporated therein, will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or

K&E 14589214.12

instruments and (b) the restrictions, if any, on the transferability of such security and instruments in the organizational documents set forth in the Plan Supplement or other constituent documents.

17. **Cancellation of Existing Securities and Agreements.** On the Effective Date, except as otherwise specifically provided for in the Plan or the Confirmation Order: (a) the obligations of the Debtors under the Revolving Credit Facility, the Term Loan and the Indenture, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are reinstated pursuant to the Plan), shall be cancelled as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; *provided* that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of and solely to the extent necessary for allowing Holders to receive distributions under the Plan and as provided in the Plan; *provided, further,* that the preceding proviso shall not affect the discharge of Claims or Interests

36

pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except as provided in the Plan.

18.     **Subordination.**  Except as otherwise expressly provided in any of the Plan, the Confirmation Order, any other order of the Court or the DIP Documents (as defined in the Final DIP Financing Order (as defined below)), the Exit Facility Documents, the New Term Loan Documents and the HoldCo Loan Documents:  (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a Holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; (c) the distributions under the Plan to the Holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights; and (d) as provided in paragraph 26, the subordination of liens provided under any Trade Intercreditor Agreement shall survive Confirmation and the Effective Date and be subject and subordinate to the liens and security interests securing the obligations of the Debtors or the Reorganized Debtors, as applicable, under the Exit Facility and New Term Loans.

19.     **Release of Liens.**  Except as otherwise provided herein, in the Plan, the Final DIP Financing Order (including with respect to the Liens securing the "Obligations" under and defined in the DIP Documents), the Exit Facility Documents, the New Term Loan Documents, the HoldCo Loan Documents, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, and without any prejudice to the rights of the Debtors, the

37

DIP Agents, the DIP Lenders, and the lenders and agents under the Exit Facility, the New Term Loans, and the HoldCo Loan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates (other than with respect to a Secured Claim that is reinstated pursuant to the Plan), shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor, its successors and assigns.

20. **Compromise of Controversies.** In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan and the entry of the Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to Article IV.U. of the Plan.

21. **Assumption or Rejection of Contracts and Leases.** Except as otherwise provided in the Plan, in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by the Debtors as part of the Plan Supplement. Such contract

K&E 14589214.12

and lease assumptions or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, if any, are overruled. On the Effective Date but before the effectiveness of the Plan, Source Home Entertainment, Inc. (as HoldCo) shall assume all the executory contracts or unexpired leases, if any, to which it is a party and assign such contracts to an affiliated Reorganized Debtor.

22. **Tax Claims Bar Date.** Any Creditor holding a Priority Tax Claims or any Claim that would otherwise be of a kind specified in section 507(a)(8) of the Bankruptcy Code, but for the fact that such Claim arose prior to the applicable statutory period set forth in section 507(a)(8) of the Bankruptcy Code must file a Proof of Claim on account of such Claim and such Proof of Claim must be filed with the Bankruptcy Code on or before the first Business Day that is 180 days after the Effective Date, and all such Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors, HoldCo or the Reorganized Debtors, their Estates and their property, and all such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII.A. and Article VIII.H. of the Plan.

23. **Resolution of Contingent, Unliquidated and Disputed Claims.** Except as otherwise set forth herein or by order of the Bankruptcy Court, the Debtors and the Reorganized Debtors, as applicable, shall have exclusive authority to File objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims. From and after the Effective Date, the Reorganized Debtors, as applicable, may settle, compromise or withdraw objections to any contingent or Disputed Claim without approval of the Bankruptcy Court or notice to any party. Except as otherwise set forth herein, the Debtors, prior to the Effective Date, and thereafter the Reorganized Debtors, shall have the exclusive authority to File

39

objections to and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims not otherwise reflected in the Debtors' books and records and not otherwise satisfied and paid pursuant to Article III of the Plan. From and after the Effective Date, the Reorganized Debtors may settle, compromise or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party. Except as expressly provided by the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

24. **Authorization to Consummate.** The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article X of the Plan.

25. **Exit Facility, New Term Loans and HoldCo Loan.** The Exit Facility, the HoldCo Loan and the New Term Loans and the terms and conditions of the foregoing and the respective agreements and undertakings of the Debtors, the Reorganized Debtors and HoldCo therein are approved. Each of the Debtors, the Reorganized Debtors and HoldCo, as the case may be, is authorized to undertake any and all acts and actions required to implement the Exit Facility, the New Term Loans and the HoldCo Loan, including without limitation, entering,

40

executing, delivering, filing or recording any documents related thereto, including, without limitation, all related loan documents, as well as any other agreements, subordination or intercreditor agreements, instruments, or documents necessary or appropriate to implement the Exit Facility, the New Term Loans and the HoldCo Loan, with such changes from the terms set forth in the Exit Facility Term Sheet, the New Term Loans Term Sheet and the HoldCo Term Sheet as may be agreed to between and among the Debtors, the Reorganized Debtors, HoldCo, and the agents and lenders under the Exit Facility, the New Term Loans, and the HoldCo Loan, and no board, shareholder, manager, or member vote shall be required with respect thereto. The parties to the Exit Facility, the New Term Loans and the HoldCo Loan are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or appropriate to assist in the implementation of all transactions contemplated by the Exit Facility, the New Term Loans and the HoldCo Loan, including, but not limited to, the execution, delivery, filing and recording of the documents and instruments as are necessary or appropriate to effectuate, implement or consummate fully the Exit Facility, the New Term Loans and the HoldCo Loan, the Plan or the Confirmation Order. The obligations under the Exit Facility, the New Term Loans, the HoldCo Loan, the Exit Facility Documents, the New Term Loan Documents, and the HoldCo Loan Documents, including without limitation, all related mortgages and security agreements, shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law. For purposes of any Trade Intercreditor Agreement, (a) the Exit Facility is hereby deemed an amendment, modification and refinancing of the Revolving Credit Facility and the DIP Revolving Credit Facility and (b) each of the New Term Loans is hereby deemed an amendment, modification and

41

refinancing of the Term Loan. The Debtors and Reorganized Debtors are authorized to pay the fees and expenses set forth or referred to in any commitment letter, term sheet, or financing fee letter associated with the Exit Facility, New Term Loans, or the HoldCo Loans in accordance with the respective terms and to perform any indemnity obligations set forth or referred to therein. All payment obligations of the Debtors and Reorganized Debtors under any such commitment letter, term sheet, and related financing fee letter shall be entitled to priority as Administrative Claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Notwithstanding any provision in the Plan or the Confirmation Order to the contrary, from and after the Effective Date, the choice of law and jurisdiction provisions of the Exit Facility Documents, the New Term Loan Documents, and the HoldCo Loan Documents shall apply to the Exit Facility, the New Term Loans, and the HoldCo Loans, respectively. Nothing in the Plan or the Confirmation Order shall be inconsistent with the terms of the Exit Facility, the New Term Loans, or the HoldCo Loan.

26. **Exit Liens, New Term Loan Liens, and HoldCo Loan Pledge.** The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Court) the execution, delivery, filing and recordation of the Exit Facility Documents, the New Term Loan Documents, and the HoldCo Loan Documents and all transactions contemplated by such documents with respect to the Exit Facility, New Term Loans and the HoldCo Loan. The Exit Liens, the New Term Loan Liens, and the HoldCo Loan Pledge shall be legal, valid and enforceable liens and security interests, as provided in the Exit Facility Documents, the New Term Loan Documents, and the HoldCo Loan Documents and any other documents to be executed and delivered pursuant thereto shall constitute the legal, valid and binding obligations of Reorganized Debtors. As of the

42

Effective Date, the Exit Liens, the New Term Loan Liens, and the HoldCo Loan Pledge (i) shall constitute legal, valid and duly perfected liens against and security interests in the Collateral (as will be defined in the Exit Facility Documents and the New Term Loan Documents), and with respect to the HoldCo Loan Pledge, the SIC Undertaking; (ii) shall have the following priorities: (A) the liens on and security interests in the Current Asset Collateral[3] securing the "Obligations" under and as will be defined in the Exit Facility Documents shall be first priority liens and security interests (subject to Permitted Liens as specified in the Exit Facility Documents) and shall be senior in operation, priority and effect to liens on and security interests in the Current Asset Collateral securing the "Obligations" under and as defined in the New Term Loan Documents; (B) the liens on and security interests in the Current Asset Collateral securing the "Obligations" under and as will be defined in the Exit Facility Documents and the liens on and security interests in the Current Asset Collateral securing the "Obligations" under and as will be defined in the New Term Loan Documents shall each be senior in operation, priority, and effect to liens on and security interests in the Current Asset Collateral and the products and proceeds thereof securing obligations owing to any vendor ("Vendor") under any security agreement ("Trade Security Agreement") and the liens and security interests securing obligations to any Vendor are hereby made expressly subject and subordinate to the liens on and security interests in the Current Asset Collateral securing the "Obligations" under and as will be defined in the Exit Facility Documents and the liens on and security interests in the Current Asset Collateral securing the "Obligations" under and as will be defined in the New Term Loan Documents;

---

[3]  In sum and substance, "Current Asset Collateral" means all collateral other than Fixed Asset Collateral; provided however, that to the extent that identifiable proceeds of Fixed Asset Collateral are deposited or held in any deposit account or securities accounts that constitute Current Asset Collateral after an enforcement notice such that collateral or other identifiable proceeds shall be treated as Fixed Asset Collateral.

43

(C) the liens on and security interests in the Fixed Asset Collateral[4] securing the "Obligations" under and as will be defined in the New Term Loan Documents shall be first priority liens (subject to Permitted Liens as specified in the New Term Loan Documents) and security interests and shall be senior in operation, priority and effect to liens on and security interests in the Fixed Asset Collateral securing the "Obligations" under and as will be defined in the Exit Facility Documents; (D) the liens on and security interests in the Fixed Asset Collateral securing the "Obligations" under and as will be defined in the New Term Loan Documents and the liens on and security interests in the Fixed Asset Collateral securing the "Obligations" under and as will be defined in the Exit Facility Documents shall each be senior in operation, priority, and effect to liens on and security interests in the Fixed Asset Collateral and the products and proceeds thereof securing obligations owing to any Vendor under any Trade Security Agreement and the liens and security obligations securing obligations to any Vendor are hereby made expressly subject and subordinate to the liens on and security interests in the Fixed Asset Collateral securing the "Obligations" under and as will be defined in the Exit Facility Documents and the liens on and security interests in the Fixed Asset Collateral securing the "Obligations" under and as will be defined in the New Term Loan Documents; (E) the liens on and security interests in the

---

[4]  In sum and substance, "Fixed Asset Collateral" means, collectively, that portion of the collateral now owned at or any time hereafter acquired by the borrower and any guarantor under the Exit Facility or New Term Loans or in which such borrower or guarantor now has or at any time in the future may acquire any right, title or interest, consisting of (i) capital stock owned by each credit party, (ii) equipment, (iii) any interest in real property and fixtures, (iv) general intangibles, solely to the extent relating to such capital stock, equipment, interests in real property and fixtures (subject to the Exit Facility's collateral agent's right to use any intellectual property in connection with the liquidation of any inventory), (v) instruments, documents, investment property, letters of credit, letter of credit rights, supporting obligations and chattel paper, in each case, to the extent that any amounts payable under or in connection with any of the items or types of assets described in clauses (i) through (iv) above are evidenced by the items described in this clause (v), (vi) all commercial tort claims arising from or in connection with any of the items or types of assets described in clause (i) through (v) above, (vii) all books and records to the extent relating primarily to any of the items or types of assets described in clauses (i) through (vi) above, and (viii) all proceeds and products of any of the items or types of assets described in clauses (i) through (vii) above.

44

Collateral securing the obligations under the New Term Loan A shall have priority over the liens on and security interests in the Collateral securing the obligations under the New Term Loan B; and (F) the HoldCo Loan Pledge shall have a first priority pledge of the SIC Undertaking; and (iii) shall be deemed to be created, valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such security interests, liens and mortgages and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of the liens and security interests. In the event an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, the Exit Liens, the New Term Loan Liens, and the HoldCo Loan Pledge shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.

27. **DIP Financing.** Nothing in the Confirmation Order or the Plan shall conflict with the DIP Documents or DIP Financing Orders (as defined below). Notwithstanding anything to the contrary contained in the Confirmation Order or the Plan, the DIP Agents' and DIP Lenders' claims, liens, interests, rights, priorities, protections, and remedies arising under or in connection with the order that approved the DIP Facilities on a final basis on May 28, 2009 (the "Final DIP Financing Order"), the order that approved the DIP Facilities on an interim basis on April 29, 2009 (the "Interim Financing Order" and together with the Final DIP Financing Order, the "DIP Financing Orders"), the DIP Facilities or the DIP Documents shall extend and continue in full force and effect during the period commencing on the Confirmation Date and continuing

through the later to occur of the Effective Date and the Closing Date under and defined in each of the Exit Facility Agreement, the New Term Loan Credit Agreement and the HoldCo Loan Agreement (the "Post-Confirmation Period"); *provided further* that during the Post-Confirmation Period any and all requirements, obligations or responsibilities of the DIP Agent, each DIP Lender or otherwise relating to the Carve Out (as defined in the DIP Financing Orders) shall remain in full force and effect. Any loans, advances, letter of credit accommodations or other financial or credit accommodations made or provided by the DIP Agents and DIP Lenders to the Debtors at any time during the Post Confirmation Period shall be fully protected and entitled to all of the rights, claim priority, liens, remedies and protections afforded under the DIP Facilities and the DIP Financing Orders. Each of the Debtors and the Reorganized Debtors. as the case may be, is authorized to undertake any and all acts and actions required to implement any release agreement relating to the DIP Facilities, including without limitation, entering, executing, delivering, filing or recording any documents related thereto.

28. **Release of Carve Out.** Effective as of the Effective Date, the Debtors and their respective Case Professionals (as defined in the DIP Financing Orders) hereby release and discharge the DIP Agents and each DIP Lender from any and all requirements, obligations or responsibilities relating to the Carve Out (as defined in the DIP Financing Orders) with respect to fees and expenses incurred by the Case Professionals (as defined in the DIP Financing Orders) after the Effective Date, including, without limitation, reserving for or otherwise funding the Carve Out with respect to fees and expenses incurred by the Case Professionals (as defined in the DIP Financing Orders) after the Effective Date, as set forth in the DIP Financing Orders.

29. **Professional Compensation.** Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the

46

Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to the final allowance of any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) 45 days after the Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim. Notice of a hearing on the final allowance of Fee Claims shall be provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course of business and without the need for Court approval.

30. **Administrative Claims.** Subject to the provisions of sections 328(a), 330 and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any, or otherwise in the ordinary course of business.

31. **Discharge.** As of the Effective Date, except as otherwise provided in the Plan, the Confirmation Order and the Final DIP Order, the confirmation of the Plan shall: (a) as provided in and pursuant to Article VIII.A. of the Plan and except as otherwise provided in the Plan, discharge and release all Claims, Interests and Causes of Action against the Debtors or any of their assets or properties of any nature whatsoever, including any interest accrued on Claims or Interest from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in the Debtors, such assets or properties,

47

regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(j) or 502(i) of the Bankruptcy Code, in each case whether or not a Proof of Claim was filed, such Claim was allowed or the Holder of such Claim has accepted the Plan and such discharge and release shall constitute a judicial determination of the discharge of all Claims and Interests and any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured; (b) as provided in and pursuant to Article IV.M. of the Plan, amend, modify and refinance the obligations of the Debtors under the Revolving Credit Facility and the Term Loan such that the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (c) as provided in and pursuant to Article IV.M. of the Plan, cancel the Indenture and any related guarantees, and the Interests, provided that any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for the purpose of and solely to the extent necessary for (i) allowing Holders to receive distributions under the Plan and (ii) as otherwise provided by the Plan.

32.     **Return of Deposits.**  All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Adequate Assurance Deposits"), including any deposit provided pursuant to any order of the Court approving *the Debtors' Motion for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services*, shall return such Adequate Assurance Deposits to the Debtors or the Reorganized

48

Debtors, as the case may be, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

33.     **Releases, Injunction, Exculpation, and Related Provisions Under the Plan.** The releases, injunctions, exculpations and related provisions set forth in Article VIII.D., E., F. and H. of the Plan are hereby approved and authorized in their entirety.

34.     **Release and Exculpation Provisions.** All release and exculpation provisions embodied in the Plan, including those contained in Article VIII.D., E. and F. of the Plan are (a) integral parts of the Plan, (b) fair, equitable, and reasonable, (c) given for valuable consideration and (d) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all Persons and Entities, to the extent provided therein.

35.     **Indemnification Obligations.**

a.     As provided in Article VIII.G. of the Plan, on and from the Effective Date, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation, board resolutions or employment contracts for the current and former directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors and such current and former directors', officers', managers', and employes' respective Affiliates.  Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless, except as provided in the Plan or the Plan Supplement, each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, based in whole or in part upon any act or omission,

49

transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors. Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. In the event that any Indemnified Party, as a result of matters to which the foregoing Indemnification may relate, the Reorganized Debtors shall promptly reimburse any such Indemnified Party, in accordance with, and to the extent of, the Reorganized Debtors' indemnification obligations, for its reasonable and documented legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof.

b. As of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors or HoldCo if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an executory contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. On or before the Effective Date, the Reorganized Debtors may obtain reasonably sufficient tail coverage under a directors and officers' liability insurance policy for the current and former directors, officers, and managers.

36. **Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the

50

United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and each Debtor shall pay any such fees as if no substantive consolidation has occurred for purposes of the Plan.

37. **Intercompany Claims.** Notwithstanding anything to the contrary herein, on or after the Effective Date, any debts held by a Debtor against another Debtor shall be reinstated, except in the case of HoldCo the last sentence of paragraph 10 shall control.

38. **Compliance with Tax Requirements.** Each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations. The Reorganized Debtors and the Disbursing Agent are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

39. **Exemption from Transfer Taxes.** The making, delivery, filing, or recording at any time of any deed, mortgage, leasehold mortgage, deed of trust, leasehold deed of trust, memorandum of lease, lease, assignment, leasehold assignment, security agreement, financing statement, or other instrument of absolute or collateral transfer required by, or deed necessary or

51

desirable by the parties to, the Exit Facility, the New Term Loans, or the HoldCo Loan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

40. **Documents, Mortgages and Instruments.** Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and the Confirmation Order.

41. **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except as otherwise provided in the Confirmation Order, if any or all of the provisions of the Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors, the Reorganized Debtors or HoldCo, as applicable, prior to the effective date of any such reversal, stay, modification or vacatur, including, without limitation (a) the validity of any obligation, indebtedness or liability incurred by the Debtors, the Reorganized Debtors or HoldCo to the Exit Facility Agent (or any other agent under the Exit

52

Facility Documents), the New Term Loan Administrative Agent (or any other agent under the New Term Loan Documents), the Exit Facility Lenders, the lenders under the New Term Loans and/or the lenders (and any agents) under the HoldCo Loan under the Exit Facility Documents, the HoldCo Loan Documents and New Term Loan Documents or (b) the validity and enforceability of the Exit Liens or New Term Loan Liens. Notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto. Specifically, notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any obligation, indebtedness or liability incurred by the Debtors, the Reorganized Debtors or HoldCo under the Exit Facility Documents, New Term Loan Documents or the HoldCo Loan Documents (prior to written notice, as applicable, to the respective Exit Facility Lenders, Exit Facility Agent, lenders under the New Term Loans, New Term Loan Administrative Agent, or lenders (and any agent) under the HoldCo Loan of the effective date of such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto and the Exit Facility Lenders, the Exit Facility Agent (or any other agent under the Exit Facility Documents), the New Term Loan Administrative Agent (or any other agent under the New Term Loan Documents), the lenders under the New Term Loans and the lenders (and any agent) under the HoldCo Loan shall be entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the Exit Facility Documents, the New Term Loan Documents and the HoldCo Loan Documents.

K&E 14589214.12

42.     **Continued Effect of Stays and Injunction.** All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full force and effect thereafter, except as otherwise provided by the Confirmation Order, the Plan or their own terms. Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by the Confirmation Order.

43.     **Preservation of Causes of Action.** Any Causes of Action that the Debtors may hold against any Entity are hereby preserved in accordance with Article IV.U. of the Plan.

44.     **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XII of the Plan.

45.     **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.** The provisions of the Plan and the Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

46.     **Modifications.** Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other documents that are necessary to effectuate the Plan, that do not materially modify the terms of such documents and are consistent with the Plan, the DIP Documents, the Final DIP Financing

54

Order, the Exit Facility, the New Term Loans, and the HoldCo Loan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend or modify materially the Plan and the Plan Supplement with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in a manner consistent with the terms of the DIP Documents, the Final DIP Financing Order, the Exit Facility, the New Term Loans, and the HoldCo Loan, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan. Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

47. **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such Exhibit), pursuant to Article I.D. of the Plan, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws.

48. **Applicable Non-Bankruptcy Law.** Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Confirmation Order, the Plan and related documents

K&E 14589214.12

or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

49.     **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule or statement with the Court or the Office of the United States Trustee is hereby waived as to any such list, schedule or statement not filed as of the Confirmation Date.

50.     **Governmental Approvals Not Required.**     The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

51.     **Notice of Confirmation Order.**  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of the Confirmation Order, substantially in the form annexed hereto as Exhibit B, to all parties who hold a Claim or Equity Interest in the Chapter 11 Cases, including those parties who have requested service of papers under Bankruptcy Rule 2002 and the U.S. Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of the Confirmation Order.

52.     **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

53.     **Waiver of Stay.**  The stay of the Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h) and 6006(d)), whether for ten (10) days or

K&E 14589214.12

otherwise, is hereby waived, and the Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

54. **References to Plan Provisions.** References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein. The failure to specifically include or to refer to any particular article, section or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

55. **Headings.** Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or the Confirmation Order for any other purpose.

56. **Effect of Conflict Between the Plan and Confirmation Order.** If there is any inconsistency between the terms of the Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control.

57. **No Waiver.** The failure to specifically include any particular provision of the Plan in the Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

58. **Specific Creditor Provisions.** <u>Realty Fund VIII, L.P.</u> The Debtors shall satisfy any outstanding Cure Claims of Realty Fund VIII, L.P. ("<u>Realty Fund</u>") on account of its lease with the Debtors with respect to the property located at 6420 Wilshire Boulevard, Los Angeles, California (the "<u>Wilshire Lease</u>") in accordance with Article V.B. of the Plan. Notwithstanding any other provision in the Plan or the Confirmation Order, with respect to, and conditioned upon,

57

the assumption of the Wilshire Lease, nothing therein shall, in any way, result in the release, impairment, or waiver of any of Realty Fund's or the Debtors' claims and rights under the Wilshire Lease, including, but not limited to, any outstanding Cure Claims. Further, following, and conditioned upon, the assumption of the Wilshire Lease on the Effective Date of the Plan, any and all rights or obligations of the Debtors, the Reorganized Debtors or Realty Fund under the Wilshire Lease, whether arising before of after the confirmation of the Plan, shall remain in full force and effect notwithstanding the confirmation of the Plan.

59.     Maureen Linehan. Notwithstanding anything herein or in the Plan to the contrary, neither the Plan nor the Confirmation Order shall enjoin, impair, modify, discharge or otherwise affect any rights or remedies Maureen Linehan has or may have with respect to claims asserted in her lawsuit against Alliance Entertainment Corporation pending in the Circuit Court for the 17th Judicial Circuit of Florida, in and for Broward County, Florida, Case No. 06-16851-03 (the "Linehan State Court Action"), or to seek relief from the automatic stay arising under section 362 of the Bankruptcy Code with respect to the Linehan State Court Action; *provided* that the Debtors expressly reserve all Claims, rights, remedies, defenses, counterclaims, or Causes of Action with respect to the Linehan State Court Action, and the automatic stay arising under section 362 of the Bankruptcy Code shall remain in effect with respect to the Linehan State Court Action until the Effective Date occurs or the automatic stay is lifted by a Final Order of the Court, whichever comes first.

60.     eVox Productions, LLC. Notwithstanding anything herein or in the Plan to the contrary, neither the Plan nor the Confirmation Order shall enjoin, impair, modify, discharge or otherwise affect any Claims, rights, remedies or Causes of Action eVox Productions, LLC has or may have with respect to (a) those certain images owned by eVox (collectively, the "eVox

Copyrighted Images"), including, but not limited to, those copyrighted images addressed in the License Agreements (as defined in the *Objection of eVox Productions, LLC to Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 174]), and (b) the License Agreements, and eVox is expressly permitted to pursue, commence and/or continue any and all such Claims, rights, remedies, or Causes of Action, wherever it may choose; *provided* that the Debtors expressly reserve all Claims, rights, remedies, defenses, counterclaims or Causes of Action with respect to the License Agreements or the eVox Copyrighted Images.

61.     Notwithstanding Article VII.B of the Plan, the Debtors shall not seek to liquidate any Claims, rights, remedies and/or Causes of Action held by eVox arising from the eVox Copyrighted Images or the License Agreements through a proceeding before the Court; *provided* that in the event eVox files a Proof of Claim or otherwise seeks to compel payment on account of the eVox Copyrighted Images or the License Agreements through a proceeding before the Court, nothing herein shall impair, modify, limit or otherwise affect the: (a) Debtors' right to object to such Proof of Claim or request for payment; or (b) the Court's jurisdiction to adjudicate such objection, Proof of Claim or request for payment.   In addition, nothing in the Plan nor the Confirmation Order shall be deemed to be or constitute a release of eVox's Claims, rights, remedies and/or Causes of Action against the Debtors and the Debtors' officers and directors; *provided* that the Debtors, their officers and directors expressly reserve all Claims, rights, remedies, defenses, counterclaims or Causes of Action with respect thereto.

62.     Internal Revenue Service.   Notwithstanding any provision to the contrary in the Plan, the Confirmation Order or in any other implementing Plan documents:  (a) nothing shall affect the ability of the Internal Revenue Service ("IRS") to pursue, to the extent allowed by non-

bankruptcy law, any non-debtors for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Reorganized Debtors; (b) the Priority Tax Claims Bar Date shall apply to the claims of the IRS only to the extent that the Debtors or the Reorganized Debtors file their outstanding federal tax returns for claims that are subject to the Priority Tax Claims Bar Date one hundred and twenty days prior to the Priority Tax Claims Bar Date; (c) the Debtors or the Reorganized Debtors will file within 60 days of the Effective Date, or as otherwise may be mutually agreed in writing, those outstanding federal tax returns listed by the IRS in its proofs of claims for these jointly administered Chapter 11 Cases; (d) the IRS rights to setoff and recoupment shall be preserved; (e) with respect to IRS claims, the automatic stay provision set forth in Article XIII.H of the Plan shall not extend beyond the applicable period provided for pursuant to section 362 of the Bankruptcy Code; and (f) for the sole and limited purpose of payment of the IRS's claims, the Effective Date shall be defined as the day selected by the Debtors that is a Business Day after the Confirmation Date on which the conditions as specified in the Plan, including Article X.B, have been satisfied or waived; *provided, however,* that such date shall be no more than ninety days from the date of the docketing of the Confirmation Order without further order of the Court. To the extent that the Debtors elect not to pay the Priority Tax Claims of the IRS in full on the Effective Date, payment on such claims shall commence on the Effective Date and be paid on a no less frequent than equal quarterly basis, or other mutually agreed upon basis in writing, for a period of not more than five years after the Petition Date with interest to accrue from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622, or as otherwise may be mutually agreed in writing.

63.     <u>SINV Parties</u>. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, neither the Plan nor the Confirmation Order shall release, reduce, eliminate

K&E 14589214.12

(including, without limitation, by substantive consolidation), enjoin, impair, modify, discharge or otherwise affect any Claims or Causes of Action SINV, LLC, SINV II, LLC, BFG Holdings 2000, LLC, and/or SI Holdings, LLC (collectively, the "SINV Parties"): (a) have or may have, either directly or by way of derivative action, against: (i) the Debtors and/or Reorganized Debtors; (ii) the Debtors' and/or Reorganized Debtors' affiliates and/or former affiliates; (iii) any officers or directors of the Debtors' and/or Reorganized Debtors' affiliates and/or former affiliates; and/or (iv) any stockholder or former stockholder of the Debtors' and/or Reorganized Debtors' affiliates or former affiliates; and (b) that are in any way related to any damage, loss, or obligation, arising out of or related to any lease or other agreement, including, without limitation, any Claims or Causes of Action held by any of the SINV Parties for fraudulent transfers, unlawful dividends, breach of fiduciary duty, or otherwise relating to the collection of any loss, damage, or other obligation arising under or related to any lease or other agreement; *provided* that, the Debtors, the Reorganized Debtors, HoldCo or any entity or person referred to in clauses (i) through and including (iv) of this paragraph expressly reserve all claims, rights, remedies, defenses, counterclaims (including, without limitation, either directly or by way of derivative action, any claims against the SINV Parties, any current or former affiliates, directors, officers, stockholders or interest holders thereof), causes of action (including, without limitation, wrongful suit , either directly or by way of derivative action) or otherwise with respect to any such Claims or Causes of Action. Without limitation, for avoidance of any doubt: (i) neither the Debtors, HoldCo, the Reorganized Debtors, nor any entity or person referred to in clauses (i) through (iv) above shall be entitled to raise any objection to or raise any defense to any such Claim or Cause of Action based upon substantive consolidation of the Estates under the Plan or

61

Articles VIII.E or VIII.H. of the Plan; and (ii) Article VIII.A of the Plan shall not affect the liability of any ~~Non-Debtor party~~ *non-Debtor entity* on any Claim or Cause of Action held by the SINV Parties.

64.    Notwithstanding anything to the contrary in the Plan or Confirmation Order, the Claim Objection Bar Date with respect to any Proof of Claim filed by the SINV Parties shall be the date which is 80 days following the Filing and receipt of such Proof of Claim by the Reorganized Debtors of the applicable SINV Party Proof of Claim.

65.    <u>BTR Hampstead, LLC</u>.  Notwithstanding anything herein or in the Plan to the contrary, neither the Plan nor the Confirmation Order shall enjoin, impair, modify, discharge or otherwise affect any Claims, rights, remedies or Causes of Action BTR Hampstead, LLC has or may have with respect to *Source Interlink Distribution v. BTR Hampstead, LLC* on appeal before the Maryland Court of Special Appeals, Case Number 00199, September Term, 2009 (the "<u>State Case</u>") and BTR Hampstead, LLC is hereby granted relief, as of the effective date of the Plan, from the automatic stay of section 362 of the Bankruptcy Code to continue the State Case; *provided* that the Debtors expressly reserve all Claims, rights, remedies, defenses, counterclaims or Causes of Action with respect to the State Case or otherwise.

66.    **Final Order.**  The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Wilmington, Delaware
Dated:  **May 28** 2009

_____
The Honorable Kevin Gross
United States Bankruptcy Judge

65A. For the avoidance of doubt, the Members of the Ad Hoc Committee of Equity Security Holders (as defined in [Docket No. 155]) are not Releasing Parties under the Plan.

62